Ron L. **NICHOLS** and Jurly **Nichols, Appellants,**

v.

**CITY OF EVANSDALE,** **Iowa, Appellee.**

No. 03–1385.

Supreme Court of Iowa.

Oct. 6, 2004.

Jay A. Nardini of Nardini Law Office, Cedar Falls, for appellants.

William G. Nicholson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellee.

CADY, Justice.

This appeal requires us to consider the rights and remedies of parties to an exchange of parcels of land when both parties were unaware of sewer lines beneath the surface of one of the parcels. The district court rejected the plaintiffs' claims for trespass, rent, and declaratory relief and granted the defendant an easement. On our de novo review, we affirm the decree of the district court in part, reverse in part, and remand for a hearing on damages for trespass.

## I. Background Facts and Proceedings

The origins of this dispute extend back to April 1997, when Ron and Jurly Nichols and the City of Evansdale, Iowa exchanged parcels of land. The Nichols owned a parcel of land located at 122 Brown Street (hereinafter Brown Street Property). The City was interested in acquiring this land in order to extend a road, Industrial Drive, to connect with Brown Street. The City owned a larger, undeveloped parcel of land one block away. This lot was 215 feet by 108 feet and was bordered on three sides by Trail Avenue, Evans Road, and Gilbert Drive (hereinafter Gilbert Drive Property). The Nichols were in the business of selling modular homes and were interested in acquiring the Gilbert Drive Property in order to subdivide it into two lots, erect a modular home on each, and sell each parcel. Consequently, the City quitclaimed its interest in the Gilbert Drive Property to the Nichols, and the Nichols quitclaimed their interest in the Brown Street Property to the City. The quitclaim deed for the Gilbert Drive Property did not reserve any easements.

After the exchange, the Nichols purchased three modular homes: two twenty-eight-foot by forty-eight-foot models and one twenty-eight-foot by sixty-foot model. The Nichols built one of the smaller homes on the western half of the Gilbert Drive Property. When the Nichols connected the home to the sewer system, the City Waste Water Superintendent informed them that there were sewer mains running beneath the eastern portion of the property. Ron Nichols claimed this was the first time he learned of the existence of the utilities beneath his land. However, he took no action concerning the existence of the utilities at this time.

In March 1999, the Nichols began plans to place the other smaller modular home on the eastern half of the property. In preparing for the construction, they confirmed that the City did have two sewer mains located under the eastern half of the property. The location of the sewers made it impractical to erect the home on the property. Thus, the Nichols eventually sold the home and erected it on another lot.

In April 1999, the Nichols located a prospective buyer for the larger modular home, who was interested in erecting it on the eastern half of the Gilbert Drive Property. However, when the prospective buyer discovered the location of the underground utilities, he declined to proceed with the purchase. A city ordinance required buildings on the property to be set back twenty-five feet from the street. In addition, the City required easements to span between eight and fifteen feet on either side of the sewer mains. Thus, the larger home could not be erected in the desired position on the lot.

The Nichols asked the City to move the sewer mains. The City refused. It claimed it would cost approximately $75,000 and would require closing Evans

Road for weeks. Instead, the City offered the Nichols $9000 and then $10,000 to purchase a utility easement. The City also offered the Nichols $20,000 to purchase the eastern half of the Gilbert Street Property, although the entire Gilbert Street Property only had an assessed value of $18,090. The Nichols refused the City's offers and insisted the City move the sewer mains. Additionally, on March 28, 2000, Ron Nichols sent a letter to the City demanding $350 per month in rent for the Gilbert Street Property, beginning April 1, 2000. The City did not respond to his demand.

On November 14, 2001, the Nichols filed a petition against the City, seeking a declaratory judgment that the City had "no legal right to have its sewer lines passing through and under [the Nichols'] property" and asked the court to order the City to remove the sewer lines at its own expense. The Nichols further asserted that the presence of the sewer lines constituted a trespass and that they were entitled to $350 per month in rent from April 1, 2000 until the sewer lines were removed.

The City counterclaimed. Due to a mutual mistake as to the existence of sewer lines on the Gilbert Drive Property, it alleged it was entitled to reformation of the deed to either exclude the portion of land containing the sewer lines from the transfer or to reserve a utility easement for the placement and maintenance of the sewer lines. Alternatively, the City claimed the Nichols should be ordered to reconvey to the City the portion of land on which the sewer lines are located.

The district court issued its decree following a bench trial. The court found that [a]lthough the City did not reserve an easement for public utilities in its deed and their location was unknown at the time of the exchange, there is no dispute that the City never intended to deed its sewer mains to the Nichols and the Nichols never intended to accept the sewer mains and assume responsibility for maintaining them.

The court concluded that the parties did not have a landlord-tenant relationship and that the City thus did not owe the Nichols rent, that the presence of the sewer lines did not constitute a trespass, and that "the City has an easement by implication over the Nichols' property even though not reserved in the City's deed and even though the Nichols were unaware of the location of the sewer mains when they acquired the property." The court ordered that "the City ha[d] the right to record a corrective deed excepting its sewer lines from the conveyance to [the Nichols] and reserving easements, 16' wide, lying 8' on each side of [the City's] sewer mains for their maintenance, repair, and replacement." The Nichols appeal.

## II. Standard of Review

■ "Review in equity cases shall be de novo." Iowa R.App. P. 6.4. "While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal." *Hansen v. Chapin,* 232 N.W.2d 506, 509 (Iowa 1975) (citing *State ex rel. Turner v. Younker Bros., Inc.,* 210 N.W.2d 550, 567 (Iowa 1973)).

## III. Ownership of the Sewer Lines

■ Under the common law, "[w]hoever owns the soil owns everything up to the sky and down to the depths." Black's Law Dictionary 1712 (8th ed.2004) (defining the legal maxim *cujus est solum, ejus est usque ad coelum et ad inferos*). However, Iowa Code section § 557.3 provides: "Every conveyance of real estate passes all the interest of the grantor therein, *unless a contrary intent can be reasonably inferred from the terms used.*" Iowa Code 557.3

(2003) (emphasis added). This provision mirrors the principle, expressed by this court many times, that "[i]n interpreting a deed the intent of the grantor is the polestar." *Skoog v. Fredell,* 332 N.W.2d 333, 334 (Iowa 1983) (citing *Schenck v. Schenck,* 242 Iowa 1289, 1291, 50 N.W.2d 33, 34–35 (1951); 23 Am.Jur.2d *Deeds* § 159, at 205–08 (1965); 26 C.J.S. *Deeds* § 82, at 807–09 (1956)); *accord Hawk v. Rice,* 325 N.W.2d 97, 99 (Iowa 1982) ("The grantor's intent is controlling, and it is ascertained by applying general contract principles.") (citing *Flynn v. Michigan–Wisconsin Pipeline Co.,* 161 N.W.2d 56, 64–65 (Iowa 1968)); *In re Fleck's Estate,* 261 Iowa 434, 154 N.W.2d 865, 867 (Iowa 1967) (" 'The primary rule of construction is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible ....' " (Citation omitted.)).

 The record clearly shows, as the district court found, "that the City never intended to deed its sewer mains to the Nichols and the Nichols never intended to accept the sewer mains and assume responsibility for maintaining them." The mayor of Evansdale, John Mardis, testified that the City claims ownership of the sewer lines on the Gilbert Drive Property. In addition, Mr. Nichols testified that he had no knowledge of the sewer lines prior to the land-swap, thus demonstrating that he could not have intended to accept them. Further, he testified that when the Waste Water Superintendent first mentioned the location of the sewer lines, "I didn't believe that it—truthfully believe that there was a line under there 'cause I didn't figure the City would sell me the sewer system." Accordingly, we conclude the parties did not intend the sewer lines to pass to the Nichols as part of the land-swap. *See Opperman v. M.I. Dehy, Inc.,* 644 N.W.2d 1, 3 (Iowa 2002) ("Although we are not bound by the district court's factual findings, we give weight to those findings, especially when witness credibility is in issue.") (citing Iowa R.App. P. 6.14(6)(g); *Norwest Bank v. Philips Realty Co.,* 594 N.W.2d 3, 6 (Iowa 1999)).

Having established that the parties did not intend the sewer lines to pass, we look to general contract principles to determine their ownership:

> Since a sale is a consensual transaction, the subject matter which passes is to be determined by the intent of the parties, as revealed by the terms of their agreement in light of the surrounding circumstances.

> Thus, in determining whether an article secreted in the ostensible subject matter also passes by the sale the courts have looked to the terms of the contract and the situation of the parties. Where both buyer and seller were ignorant of the existence or presence of the concealed valuable, and the contract was not broad enough to indicate an intent to convey all the contents, known or unknown, the courts have generally held that as between the owner and the purchaser, title to the hidden article did not pass by the sale.

W.E. Shipley, Annotation, *Title to Unknown Valuables Secreted in Articles Sold,* 4 A.L.R.2d 318, 319 (1949). Here, neither the City nor the Nichols were aware of the presence of sewer lines on the Gilbert Drive Property, and the quitclaim deed from the City to the Nichols did not pass "all the contents, known or unknown." *Id.* Accordingly, title to the sewer lines did not pass by the land-swap, and the City retains ownership.

Nevertheless, the Nichols claim that the presence of the sewer lines on the Gilbert Drive Property constitutes a continuing trespass. A person is liable for trespass to land if he or she "fails to remove from the

land a thing which he is under a duty to remove." Restatement (Second) of Torts § 158(c) (1982). If the City had an easement over the Nichols' property, it had no duty to remove the sewer lines and is not liable for trespass. Accordingly, we must first address whether the city had such an easement.

■ There are four ways to create an easement: (1) by express grant or reservation, (2) by prescription, (3) by necessity, and (4) by implication. *Kahl v. Clear Lake Methodist Camp Ass'n*, 265 N.W.2d 622, 624 (Iowa 1978) (citing *Phillips v. Griffin*, 250 Iowa 1350, 1354, 98 N.W.2d 822, 824 (1959)). An express easement is an interest in land, which is within the statute of frauds and must be in writing. 25 Am. Jur.2d *Easements* § 15 (2004). It is undisputed that the Nichols did not expressly grant an easement to the City and that the City did not expressly reserve an easement in its quitclaim deed to the Nichols. Thus, no express easement was created.

■ An easement by prescription is akin to adverse possession. Yet, instead of acquiring title to the property, the putative easement-holder acquires the right to legally use the property. *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001) (citing *Collins Trust v. Allamakee County Bd. of Supervisors*, 599 N.W.2d 460, 463–64 (Iowa 1999)). "Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Id.* (citing Iowa Code § 564.1 (1999); *Collins Trust*, 599 N.W.2d at 463). Clearly, the City never acquired an easement by prescription in this case because the Nichols did not own the Gilbert Drive Property for the requisite ten years. It is unnecessary to consider the other elements.

■ An easement by necessity is a form of implied easement, 25 Am.Jur.2d *Easements* § 30, but it "is separate, and we have always recognized it as such." *Schwob v. Green*, 215 N.W.2d 240, 244 (Iowa 1974) (citations omitted). "One significant difference is that an easement by implication requires a showing the parties intended such a right to exist. An easement by necessity involves no such intent." *Id.* In order to establish an easement by necessity, the putative easement-holder must establish: (1) unity of title to the dominant and servient estates at some point prior to severance, (2) severance of title, and (3) necessity of the easement. *Kennedy v. Bedenbaugh*, 352 S.C. 56, 572 S.E.2d 452, 454 (2002) (citation omitted); 25 Am.Jur.2d *Easements* §§ 33, 35. The doctrine of easement by necessity is most commonly applied when a landowner parcels out a landlocked portion of his or her land and conveys it to another. 1 Restatement (Third) of Property: Servitudes § 2.15 cmt. b (2000). Under these circumstances, courts may imply an easement by necessity across the seller's land to provide the purchaser of the landlocked parcel with access to a public road. *See id.* illus. 1–2.

The City did not claim an easement by necessity in this case, so we will not address its applicability to the facts on appeal. *See DeVoss v. State*, 648 N.W.2d 56, 61–62 (Iowa 2002) (stating that the supreme court can affirm "a district court ruling on a ground other than the one upon which the district court relied *provided* the ground was urged in that court" (citations omitted)). Consequently, we turn to consider the existence of an easement by implication.

## IV. Easement by Implication

■■ The district court concluded the City had an easement by implication over

the Gilbert Drive Property. While the court correctly noted that "[a]n easement by implication exists when the owner of two parcels employs one so as to create a servitude on the other and then transfers one parcel without a specific grant or reservation of easement in the conveyance," *see McKeon v. Brammer*, 238 Iowa 1113, 1119, 29 N.W.2d 518, 522 (Iowa 1947), and that "[e]asements by implication . . . can be gained in underground pipes and tile lines," *see id.*, these principles do not resolve the doctrine's application to this case. We have stated that an easement by implication requires

> "1, a separation of the title; 2, a showing that, before separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and 3, it must appear that the easement is continuous rather than temporary, and that it is essential to the beneficial enjoyment of the land granted or retained."

*Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 838 (Iowa 1976) (quoting *Wymer v. Dagnillo*, 162 N.W.2d 514, 517 (Iowa 1968)).

▪ The district court apparently found that the relevant unity of title was between the Gilbert Drive Property, which the City owned before the Nichols, and the three city streets surrounding it. However, "[f]or the necessary unity of ownership for an implied easement to exist, the adjoining lots must be owned as a unit, not under separate deeds treated as separate properties." 25 Am.Jur.2d *Easements* § 25. The City did not own the Gilbert Drive Property and the streets as a unit and then carve out the Gilbert Drive Property and deed it to the Nichols, as is required. Rather, the City owned them separately, as separate properties. Thus, the relevant unity of title is lacking.

Moreover, it is far from clear that the use of the land (i.e., the presence of the sewer lines) was sufficiently apparent for the City to have retained an implied easement over it. We have previously observed "the words 'apparent' and 'visible' have not been considered synonymous." *McKeon*, 238 Iowa at 1122, 29 N.W.2d at 523 (citing G.R.B., Annotation, *Implied Easements in Respect of Drains, Pipes, or Sewers upon Severance of Tract*, 58 A.L.R. 824, 832 (1929)). Rather, "apparent" in this context refers to "susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject." 25 Am.Jur.2d *Easements* § 26; *accord Wiesel v. Smira*, 49 R.I. 246, 142 A. 148, 151 (1928), *cited with approval in McKeon*, 238 Iowa at 1124, 29 N.W.2d at 524; *see also* 3 Herbert T. Tiffany, *The Law of Real Property* § 784 (Basil Jones ed., 3d ed.1939) (stating that a use is apparent "if its existence was indicated by signs which must necessarily have been seen, or which might have been seen or known on a careful inspection by a person ordinarily conversant with the subject, although not readily or entirely visible"). The American Law Institute, apparently finding this definition strained and unrealistic, has in the Restatement (Third) of Property: Servitudes excepted underground utilities from the requirement that the prior use be apparent. *See* 1 Restatement (Third) of Property: Servitudes § 2.12 (requiring that *either* "existence of the prior use was apparent or known to the parties" *or* "the prior use was for underground utilities serving either parcel"). A comment to this Restatement section explains: "Implying the servitude will normally impose a relatively slight economic burden, while the costs of relocating the utility lines will often be high." *Id.* cmt. g.

The City asserts that the prior use was apparent because there were manholes at

each end of the diagonal along which the sewer lines ran and because there was a sewer location map "available to Nichols had he made a 'reasonably prudent investigation.'" We need not decide whether these factors make the City's prior use of the Gilbert Drive Property apparent, nor need we decide whether to take the Restatement (Third)'s approach of not requiring prior use for underground utilities to be apparent. Even assuming the City's prior use was apparent, or that it is not required to show that it was, the most essential requirement for an easement by implication is lacking: the easement would not be necessary to the beneficial enjoyment of what the City claims is the dominant tenement—i.e., Trail Avenue, Evans Road, and Gilbert Drive. *See Wymer*, 162 N.W.2d at 517 (stating that the implied easement must be "essential to the beneficial enjoyment of" the dominant tenement); *Farmers Mechanics Sav. Bank v. Campbell*, 258 Iowa 1238, 1249, 141 N.W.2d 917, 923 (Iowa 1966) ("necessary to the reasonable enjoyment of the property"); 1 Restatement (Third) of Property: Servitudes § 2.12(2) ("[C]ontinuance of the prior use [must be] reasonably necessary to enjoyment of the parcel, estate, or interest previously benefited by the use."); 25 Am.Jur.2d *Easements* § 29 ("To imply an easement on the severance of property from the fact that one part of the property has been subjected to a use for the benefit of another part, it is essential that such use be necessary and not merely convenient to the beneficial enjoyment of the dominant tenement."); *see also Schwob*, 215 N.W.2d at 244 (explaining that while "strict necessity need not be proven, . . . mere inconvenience is not enough").

Thus, we conclude that the City failed to acquire an easement over the Gilbert Drive Property by express reservation, by prescription, by necessity, or by implication. Notwithstanding, the City, in its counterclaim, asserted that its deed to the Nichols should be reformed based on the doctrine of mutual mistake as to the absence of underground utilities on the Gilbert Drive Property. We therefore turn to consider this claim.

## V. Mutual Mistake

 "A mistake is a belief that is not in accord with the facts." Restatement (Second) of Contracts § 151 (1981). As we have recently explained,

> Mistakes involving contracts "can be made in the formation, integration, or performance of a contract." Mistake in expression, or integration, occurs when the parties reach an agreement but fail to accurately express it in writing. Mistakes in the formation of contracts include mistakes in an underlying assumption concerning matters relevant to the decision to enter into a contract. In this category of mistake, the agreement was reached and expressed correctly, yet based on a false assumption.

*State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 151 (Iowa 2001) (citations omitted).

 When the mistake is in the expression of the contract, the proper remedy is reformation, and "it normally makes no difference if the mistake is mutual or unilateral." *Id.* (citation omitted); *accord Merle O. Milligan Co. v. Lott*, 220 Iowa 1043, 1046, 263 N.W. 262, 263–64 (1935) ("[A] mistake to justify the reformation of a contract must have been in drawing the instrument, and not in making the contract out of which it grew; that is, it must occur in reducing to writing the contract upon which the parties had agreed; and in all cases it must relate to something within the contemplation of the parties in making the contract, to something agreed upon, but not contained in the written con-

tract."); Restatement (Second) of Contracts § 155 ("Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement . . . .").

When the mistake is in the formation of the contract, on the other hand, avoidance is the proper remedy. *United States v. Williams*, 198 F.3d 988, 994 (7th Cir.1999) (citation omitted); Restatement (Second) of Contracts § 155 cmt. b; *see also id.* § 202 ("Reformation is the appropriate remedy when the mistake is one as to expression, while voidance is the proper remedy where a mistake as to a basic assumption on which the contract was based has a material effect on the agreed exchange of performances."). Specifically, when

> a mistake of both parties at the time a contract was made as to a basic assumption upon which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.

*Id.* § 152(1).

In this case, the mistake was in the formation of the contract, not in the expression of the contract. It is undisputed that neither party was aware that the sewer lines ran under the Gilbert Drive Property. Thus, they cannot have reached an agreement with respect to the sewer lines that was mistakenly expressed or omitted from the quitclaim deed. Consequently, the mistake was not in the expression, and reformation is not the proper remedy. "Courts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and foist upon the parties a contract they never made." 66 Am.

Jur.2d *Reformation of Instruments* § 1 (2001).

It is abundantly clear that the mutual mistake present in this case is the type of mistake that would make the contract voidable by the parties. *See* Restatement (Second) of Contracts § 152 ("Where a mistake of both parties at the time a contract was made as to a basic assumption upon which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ."). However, a mutual mistake in the formation of a contract does not render it void; it merely renders it void*able*. *First State Bank v. Shirley Ag Serv., Inc.*, 417 N.W.2d 448, 452 (Iowa 1987) (citing Restatement (Second) of Contracts § 152, at 385).

> A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.

Restatement (Second) of Contracts § 7. In the case of a voidable contract, if neither party seeks avoidance, the court cannot void the contract, and the contract remains valid. *First State Bank*, 417 N.W.2d at 452 (citing *Poole v. Poole*, 219 Iowa 70, 74, 257 N.W. 305, 307 (1934)).

Accordingly, while the parties made a mutual mistake in the formation of the contract, because reformation is not the proper remedy and neither party sought to avoid the contract, the transaction between the Nichols and the City was valid, and the quitclaim deed the City gave the Nichols on April 15, 1997 must be given effect as it was originally written. The district court erred when it ruled that the City "ha[d] the right to record a corrective deed . . . reserving easements, 16′ wide, lying 8′ on

each side of each of [the City's] sewer mains for their maintenance, repair, and replacement."

We conclude the agreement between the parties cannot be reformed to reserve an easement to the City. Under the unique facts of this case, the City had no legal right to have its sewer lines running beneath the Nichols' property free from any accountability to the Nichols.[1] Thus, we turn to the Nichols' trespass claim.

## VI. Trespass

As previously stated, "fail[ing] to remove from the land a thing which [a person] is under a duty to remove" constitutes a trespass. Restatement (Second) of Torts § 158(c); *accord* 75 Am.Jur.2d *Trespass* § 52 (1991); *see also Indep. Sch. Dist. v. DeWilde*, 243 Iowa 685, 693, 53 N.W.2d 256, 261 (1952) (holding that when tile drain was laid beneath plaintiff's property without lawful right, "its presence there [wa]s illegal and constitute[d] a continuing trespass" (citations omitted)). Because the City has no legal right to have its sewer lines on the Nichols' property and has failed to remove them, it is committing a continuing trespass.

 The Nichols assert that under such circumstances, they are entitled to a "mandatory injunction." However, at least when no statute expressly authorizes injunctive relief, "[t]he decision to issue an injunction . . . [is] a discretionary function of the court based on the traditional principles of equity and the specific circumstances of the case." *Worthington v. Kenkel*, 684 N.W.2d 228, 232 (Iowa 2004) (citing *Kent Prods., Inc. v. Hoegh*, 245 Iowa 205, 211, 61 N.W.2d 711, 714 (1953)).

Specifically, the following factors are considered in determining whether to enjoin a tort:

(a) the nature of the interest to be protected,

(b) the relative adequacy to the plaintiff of injunction and of other remedies,

(c) any unreasonable delay by the plaintiff in bringing suit,

(d) any related misconduct on the part of the plaintiff,

(e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied,

(f) the interests of third persons and of the public, and

(g) the practicability of framing and enforcing the order or judgment.

Restatement (Second) of Torts § 936(1). Moreover, "[i]njunctive relief is an extraordinary remedy that is granted with caution and only when required to avoid irreparable damage." *Skow v. Goforth*, 618 N.W.2d 275, 277–78 (Iowa 2000) (citing *Sear v. Clayton County Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999)).

Considering the foregoing factors and principles in our de novo review, we conclude that the Nichols have not shown they are entitled to injunctive relief in this case. Foremost, the Nichols can be adequately compensated by damages. Mr. Nichols conceded that it is possible to place either a forty-eight-foot or a sixty-foot home on the eastern half of the Gilbert Drive Property without the sewer lines causing a problem. He requests an injunction for the removal of the sewer lines in order to

---

1. It is unclear why the City did not complete proceedings to acquire an easement using its power of eminent domain. *See* Iowa Code § 6A.4(6) (2003). In any event, if the City needs to go onto the Nichols property to maintain the sewer lines without being liable for trespass, it must either purchase an easement from the Nichols or condemn an easement under the procedure set forth in Iowa Code chapter 6B.

place a sixty-foot home with an attached garage on the property facing Evans Road. However, he admitted that he did not know whether he was going to put a forty-eight-foot or a sixty-foot home on the eastern half at the time he received the Gilbert Drive Property or even at the time he ordered the homes. Nichols obtained the property to place a modular home thereon and sell it, and he is still able to do so. He cannot come to a court in equity and ask the City to remove the sewer lines at great expense and disruption to the public just because he insists on making one specific use of the property when he admits he did not acquire the property for that specific use. *See Riggs v. Meka,* 236 Iowa 118, 122, 17 N.W.2d 101, 103 (1945) ("One seeking equity must do equity and be in court with clean hands."); *Burns v. Prudential Ins. Co. of Am.,* 229 Iowa 616, 618, 294 N.W. 906, 907 (1940) ("He who seeks equity must at least offer to do equity."); *Coulter v. Smith,* 201 Iowa 984, 988, 206 N.W. 827, 828 (1926) ("The plaintiff can ask equity only on condition that he does equity.").

▬▬▬ Although injunctive relief is not warranted here, the Nichols have established a claim of trespass and, as such, are entitled to damages. *See* 75 Am. Jur.2d *Trespass* § 117 ("From every unlawful entry, or every direct invasion of the person or property of another, the law infers some damage."). The measure of damages for trespass is either the diminution of the property value caused by the encroachment or the cost to remove the encroachment. *See White v. Citizens Nat'l Bank,* 262 N.W.2d 812, 817 (Iowa 1978); Restatement (Second) of Torts §§ 929–30; 75 Am.Jur.2d *Trespass* §§ 130, 133. Because we have already concluded that the City is not obligated to remove the sewer lines, the Nichols are entitled to damages equal to the difference between the value of the Gilbert Drive Property on April 15, 1997 and the value it would have had on that date if the City's sewer lines were not running beneath the land. We reject all other claims for damages based on trespass.[2] We remand to the district court for a determination of damages based on the diminution in the value of the Gilbert Drive Property. *See In re Marriage of Bergfeld,* 465 N.W.2d 865, 871 (Iowa 1991) (noting that an "appellate court may remand an equity case for further proceedings when essential to effectuate justice") (citing *Wolf v. Murrane,* 199 N.W.2d 90, 101 (Iowa 1972)); *accord* Iowa R.App. P. 6.26 ("[I]f it appears from the record that the material facts relating [to an issue] were not fully developed at the trial or if in the opinion of the appellate court the ends of justice will be served thereby, a new trial shall be awarded of such issue or the whole case."); *see also Weinhold v. Wolff,* 555 N.W.2d 454, 466 (Iowa 1996) (remanding a case reviewed de

---

2. We note that while damages for loss of use and discomfort and annoyance may be recoverable in some cases of trespass to land, *see* 75 Am.Jur.2d *Trespass* § 130, such damages are not appropriate in this case. Loss-of-use damages are available when the trespasser dispossesses the landowner of the land or prevents his or her use of the land. *See* Restatement (Second) of Torts § 931 illus. 1. The City did not dispossess the Nichols of the Gilbert Drive Property and did not prevent them from using the land—at most, as discussed above, the presence of the sewer lines prevented one specific use of a portion of the property.

A landowner who is also an occupant of the land may recover damages for discomfort and annoyance. *See id.* § 929(1)(c). However, "[t]he owner of land who is not an occupant is not entitled to recover for these harms except as they may have affected the rental value of his land." *Id.* cmt. e. The Nichols were not occupants of the land and were not renting out the land. Thus, they cannot recover damages for discomfort and annoyance.

novo to the district court to calculate diminution in value damages for nuisance).

### VII. The Nichols' Claim for Rent

Generally, a claim for rent based on occupancy of property and a claim for trespass are mutually exclusive. *See Hawkeye Land Co. v. Laurens State Bank,* 480 N.W.2d 854, 857 (Iowa 1992) (citing 49 Am.Jur.2d *Landlord and Tenant* § 1116 (1970)). However, the Nichols' claim for rent in this case is not based solely on the trespass, but the implied-in-fact contract derived from its written demand to the City for the payment of $350 per month commencing April 1, 2000.

An implied-in-fact contract requires mutual manifestation of assent. *Frank Millard & Co. v. Housewright Lumber Co.,* 588 N.W.2d 440, 442 (Iowa 1999) (citing *Ringland–Johnson–Crowley Co. v. First Cent. Serv. Corp.,* 255 N.W.2d 149, 152 (Iowa 1977)). Generally, silence or inaction does not constitute a manifestation of assent. Restatement (Second) of Contracts § 69 cmt. a; E. Allan Farnsworth, *Contracts* § 3.14 (3d ed.1999) (stating it is a "fundamental ... tenet that mere silence is not acceptance"). There are exceptions to this general rule when: (1) "an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation," Restatement (Second) of Contracts § 69(1)(a); (2) "the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer," *id.* § 69(1)(b); (3) "because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept," *id.* § 69(1)(c); and (4) in some circumstances, when the offeree "does any

act inconsistent with the offeror's ownership of offered property," *id.* § 69(2).

None of these exceptions is applicable to the facts of this case. Thus, the City's silence and inaction in response to Mr. Nichols' offer to enter into a landlord-tenant relationship did not constitute acceptance. Accordingly, there was no contract for rent between the parties, express or implied-in-fact, and the City does not owe the Nichols rent.

### VIII. Conclusion

For the foregoing reasons, we affirm the portion of the district court's decision holding the City retained ownership of the sewer lines on the Gilbert Drive Property and finding it was not liable to the Nichols for rent. We reverse the district court's ruling that the City reserved an easement by implication over the property and was therefore entitled to record a correction deed. Finally, we reverse the district court's conclusion that the presence of the sewer lines on the property did not constitute a trespass, and we remand for a determination of the amount of damages owed to the Nichols on that claim.

### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All justices concur except LARSON, J., who takes no part.