# IN THE COURT OF APPEALS OF IOWA

No. 13-1192
Filed April 30, 2014

**MARY ANN SLYCORD,**
    Plaintiff-Appellee,

**vs.**

**AUDREY J. GARRETT and BOBBY
DEAN MARTIN, asTrustee of MMM TRUST,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Wapello County, Annette J. Scieszinski, Judge.

The appellants appeal from a declaratory-judgment ruling determining the parties' rights and responsibilities to a strip of land located between properties owned by the appellants and the appellee. **AFFIRMED.**

Matthew G. Sease of Kemp & Sease, Des Moines, for appellants.

Rick L. Lynch and Ashley M. Leyda of Lynch Law Office, Bloomfield, for appellee.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

This case involves a fifteen-foot strip of real property located between property owned by plaintiff Mary Ann Slycord and properties owned by defendants Audrey J. Garrett and Bobby Dean Martin, trustee of MMM Trust.



After disputes arose concerning Slycord's use of the strip as a driveway to access her property, Slycord filed a petition in district court seeking a declaratory judgment as to the parties' rights and responsibilities in relation to the property. Following a bench trial, the district court entered its ruling determining (1) the strip of land was a public road and not owned by Martin; (2) Slycord had a right to the non-exclusive use of an easement over that road; (3) Martin was liable for damages to the road and Slycord's property; and (4) Martin was permanently enjoined from harassing Slycord concerning the road in the future. Upon our de

novo review of the record, we agree with the district court's declarations and affirm its ruling.

### I. Background Facts and Proceedings.

The first plat concerning the relevant properties was recorded in 1900. The plat sub-divided the northwest quarter of the northwest quarter of section 13 into seven lots. However, the plat did not contain any markings of roadways between the lots, other than a highway running through Lot 7 and to the east of Lots 1 through 6.

Another plat for this area was drawn up in 1906 and recorded in 1909. This plat sub-divided the land into more lots, and it included areas for roadways between certain lots. At issue here is the strip of land designated for a roadway located south of Lots of 5 and 6 and north of Lot 10, as pictured above.[1] This plat was still the existing plat of the area at the time of trial.

In 1948, a dispute arose between prior landowners that used this road.[2] At that time, Lots 5 and 6 in section 13 were owned by James and Betty Holder. The owners of Lots 1 and 4 of section 14, Bigna, Donald, Ruth, and Kenneth Peterson, also used the road to access their lots. The Holders told the Petersons they were going to fence off the road, and the Petersons filed suit to quiet title to ensure their access to and use of the road. The Holders never responded to the suit, and a default judgment was later entered by the district court. The court's decree stated, in relevant part:

---

[1] A roadway between those lots was never built by the county; however, the adjoining landowners used the strip of land as a road to access their lots.
[2] For the sake of clarity in this opinion, we refer to the lots in the northwest quarter of the northwest quarter of section 13 as "section 13" lots and the lots in the northeast quarter of the northeast quarter of section 14 as "section 14" lots.

> [T]he court finds that the [Holders] have voluntarily disclaimed [any] right, title or interest in the driveway lane fifteen feet in width running from the "Caldwell Hill" road in a westerly direction at a location immediately south and adjacent to auditors Lots number 5 and 6 in the northwest quarter of the northwest quarter of section 13, township 72 north, range 14 west, and extending to the property of plaintiffs as described in the petition. That [the Holders] have voluntarily opened said driveway lane and are not in any manner obstructing the same. That [the Petersons], by reason of the open, notorious, continued use of said driveway lane for over forty years, are entitled to have the continued future use thereof for travel, quieted and established in the [Petersons] and all future owners of auditors Lots 1 and Lot 4 in the northeast quarter of the northeast quarter of section 14, township 72 north, range 14 west in Wapello County, Iowa.

In approximately 1982, defendant Audrey Garrett purchased Lot 10 in section 13 and Lot 1 in section 14. Defendant Bobby Martin began living with Garrett at her home on Lot 10, and at the time of trial, the couple had resided there for approximately twenty-five years. In July 2010, Garrett transferred ownership of Lot 1 to Martin as trustee of the MMM Trust. The lot is landlocked without use of the disputed road.

In May 2010, plaintiff Mary Ann Slycord purchased section 13 Lots 4, 5, and 6 from the Holders. To access her lots, she used the disputed road, as the Holders did before her. There is no other road or driveway available for Slycord to access her lots, and Lot 6 is completely land-locked.

After Slycord bought the property, Martin made numerous claims of ownership to the road. A month after Slycord moved in, Martin prevented a serviceman that had used the road to access Slycord's property from leaving the property by blocking the serviceman's vehicle in with a tractor. Martin refused to move his tractor until the county sheriff was called to the scene. Martin also blocked in other visitors to Slycord's home. Later, Martin made changes to the

road, including cutting up an area in the back part of the road leaving a trench, leaving Slycord unable to access her back property. Martin also dumped gravel on the road, causing the road to rise about a foot and making it uneven with Slycord's yard, as well as causing gravel to go into Slycord's yard.

In September 2012, Slycord filed suit seeking a declaratory judgment as to her and Martin's rights to use the road, along with Martin's right to "maintain" the road. A bench trial was held in May 2013, and the deputy auditor testified that after she researched the plats, she determined the disputed road was not owned by anyone. She also testified that neither the current nor the prior owners abutting the road paid taxes on the property. Both Slycord and Martin offered surveyors' opinions concerning the strip of land, and essentially, both surveyors agreed that the road was not owned by anyone.

Slycord testified that Martin harassed her and her guests, along with "destroying" the road and placing gravel on part of her lawn. She requested the court declare that Martin and Garrett have no right, title, or interest in the roadway to deny her access to the road and her property, and she sought Martin be enjoined from denying her access and from further altering the road. Additionally, she requested Martin be ordered to return the road to its prior condition.

Martin and Garrett testified. They believed the Holders' had lost any and all of their rights, claims, and title to the road by way of the 1948 court ruling, and they asserted the ruling transferred those rights, claims, and title to the Petersons, the owners of section 14, Lot 1. Because Martin was now the owner of that lot, he maintained he was the owner of the roadway. Martin testified the

road was only intended to serve as driveway for that lot. Additionally, Martin denied damaging the road, though he admitted some gravel went over the bank into Slycord's ditch. He also testified he took an area of the road out that was "giving [him] trouble" but had planned to put a tile in for water drainage.

Thereafter, the district court entered a declaratory judgment finding in favor of Slycord. The court found Slycord "demonstrated by a preponderance of the credible evidence that the road at issue is a public one, not privately owned or controlled by Martin or anyone else." The court also concluded Martin altered the road without the right to do so and for an improper purpose, damaging Slycord in the process. The court ordered that Martin, at his expense, restore Slycord's property rights, including fixing the road and removing gravel from her yard. Finally, the court determined Martin had been harassing Slycord and ordered a permanent injunction be issued by the county clerk of court "to protect Slycord from future harassment by Martin."

Martin and Garrett now appeal.[3]

---

[3] Visualization of the subject matter of a land or property dispute is critical to a full understanding of the dispute. Plat maps, aerial photographs, photographs, and drawings are routinely used as trial exhibits to aid the finder of fact. Color is commonly employed in these exhibits to clearly delineate boundaries and ownership of lands, and witnesses testifying at trial typically refer to "this color parcel" or "that color line." When appearing in an appendix on appeal, all too often these peacock-colored models of clarity have been transformed into illegible black-and-white head-scratchers. Such is the case here. It is frustrating to an appellate judge to read transcript testimony referring to colors while at the same time looking at black-and-white reproductions in the appendix. To be sure, the original trial exhibits are typically available to this court—but not readily available to those judges who office outside Des Moines. While we are cognizant of the fact that color reproductions in the appendix are more expensive than black-and-white copies, it would be helpful to the court if litigants would at least include in the appendix color copies of those exhibits most critical to understanding the dispute. The implementation of EDMS may resolve this commonly observed phenomenon—but that remains to be seen.

## II. Scope and Standards of Review.

"Our review of actions for declaratory judgment depends upon how the action was tried to the district court." *City of Riverdale v. Diercks*, 806 N.W.2d 643, 651 (Iowa 2011). Because this action was filed and tried in equity, our review is de novo. *See Orr v. Mortvedt*, 735 N.W.2d 610, 613 (Iowa 2007); *see also* Iowa R. App. P. 6.907. We examine all the facts and the law to decide the issues anew. *Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005). "Thus, we are not bound by the trial court's findings of fact, but give them weight in our decision because of the trial court's opportunity to view the evidence and witnesses firsthand." *Kolb v. City of Storm Lake*, 736 N.W.2d 546, 553 (Iowa 2007).

## III. Discussion.

On appeal, Martin and Garrett contend the district court erred in finding Martin did not own the road, in determining Slycord also had an easement right to access her property via the road, and, alternatively, in ordering Martin to repair the road at his sole expense. We address their arguments in turn.

### A. Ownership.

Martin and Garrett contend, as they did at trial, the 1948 court ruling transferred any and all rights to the road held by the then landowners, the Holders, to the other landowners, the Petersons. Because Martin is now in the Petersons' position, Martin and Garrett maintain the ruling transferred the Petersons' "ownership rights" to him as the future owner of their lot. In support of their argument, Martin and Garrett emphasize the court's use of the following language in its ruling: "That [the Petersons], by reason of *the open*, *notorious*, *continued use* of said driveway lane for over forty years, are entitled to have the

continued future use thereof . . . ." (Emphasis added.) Because the terms "open, notorious, and continued use" are general elements of adverse possession, *see, e.g.*, *C.H. Moore Trust Estate v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988), and adverse possession transfers ownership rights, *see Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa 2004), Martin and Garrett insist the court intended to transfer ownership rights from the Holders to the Petersons for the Petersons exclusive use. We disagree.

To be sure, Martin and Garrett correctly point out those terms are essential elements in establishing adverse possession. Nevertheless, those terms are also the elements for establishing a prescriptive easement, which "is akin to adverse possession." *Id.* Like adverse possession, a prescriptive easement "is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Brede*, 706 N.W.2d at 828 (citation and internal quotation marks omitted). However, instead of acquiring title to the property, which occurs where adverse possession is established, the putative easement-holder acquires only "the right to legally *use* the property." *Nichols*, 687 N.W.2d. at 568 (emphasis added); *see also* 3 Am. Jur. 2d *Adverse Possession* § 8, at 93-94 (2002) (stating the principal difference between adverse possession and prescription is the right acquired: full title to the property and an easement, respectively). Prescriptive easements, and the elements to establish such, are not new concepts; indeed, even prior to the 1948 ruling, our supreme court has looked at the elements of adverse possession in determining whether an easement for use existed. *See, e.g.*, *Chicago, M., St. P. & P.R. Co. v. Cross*, 234 N.W. 569, 572 (Iowa 1931) ("[I]t is

quite apparent from the record that the appellee is not entitled to an easement or passageway at the place in question by reason of adverse possession."); *Culver v. Converse*, 224 N.W. 834, 836 (Iowa 1929) (citing Iowa Code § 10175 (1927): "In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession . . . ."); *Heinrich v. Schmitt*, 181 N.W. 407, 407 (Iowa 1921) (finding the district court did not err in restraining the defendants from interfering with the plaintiffs' use of a right-of-way, where the plaintiffs' "grantors and themselves [had] been in the uninterrupted, open, notorious, and adverse possession, use, and occupancy, under claim of right to use the same, with knowledge and consent of defendants"); *see also Webb v. Arterburn*, 67 N.W.2d 504, 513 (Iowa 1954) ("Consequently if plaintiffs have the roadway easement which they claim, it must be an easement by prescription, or, as otherwise stated, by adverse possession, under claim of right or color of title, openly, notoriously, continuously, and hostilely asserted against defendants for ten years or more."); *Consol. Sch. Dist. of Ellsworth v. Thompson*, 189 N.W. 803, 805 (1922) (explaining the difference between adverse possession and easement by adverse possession).

Upon our de novo review, we agree with the district court that the 1948 ruling merely established the Petersons' right to a prescriptive easement to use the road. Not only do the terms in the 1948 ruling "open, notorious, continued *use*" correspond with the elements of a prescriptive easement, the context of the terms within the ruling support a finding of only a prescriptive easement. (Emphasis added.) The court's ruling first states the Holders "voluntarily opened said driveway lane." The ruling does not find the Holders abandoned the

driveway or that the Petersons had the exclusive possession of the road for the requisite period of time necessary to establish a claim of adverse possession. *See C.H. Moore Trust Estate*, 423 N.W.2d at 15; *Thompson*, 189 N.W. at 805. Further, the court's next sentence declares that the Petersons were "entitled to have the continued future use thereof for travel." The ruling did not grant the Petersons any greater right than the use of the road for travel. For all these reasons, we conclude the 1948 ruling did not transfer any ownership rights of the road such that Martin is now the owner of the road. We therefore affirm on this issue.

### B.  Easement.

Martin and Garrett again argue that Slycord did not have an easement interest in the road because the 1948 ruling extinguished the prior titleholders' rights. However, having found their interpretation of the 1948 ruling incorrect, their argument again fails here for the same reasons. Accordingly, we affirm on this issue.

### C.  Repair Damages and Injunctive Relief.

Finally, Martin and Garrett alternatively contend that if we find Martin was not the owner of the road, he "maintained the driveway in a very good condition" and any repair work necessary to maintain Slycord's easement should be paid for by her, or at the minimum, shared between the parties. Additionally, Martin and Garrett argue the court's injunction is contrary to Iowa law because it would prohibit them from ever making repairs and does not set forth Slycord's responsibility to contribute. We disagree.

We recognize "[i]t is a well settled principle in Iowa law when property owners commonly use private roads as ways of necessity, all of those owners should be required to contribute equally to the maintenance of those roads." *Brentwood Subdivision Rd. Ass'n, Inc. v. Cooper*, 461 N.W.2d 340, 342 (Iowa Ct. App. 1990). However, it is also "true that neither party to an easement may interfere with the rights of the other." *Krogh v. Clark*, 213 N.W.2d 503, 506 (Iowa 1973). When an easement holder is merely using or maintaining the easement and is not hindering the use of the other easement holder, such maintenance and use is permissible. *See, Brede*, 706 N.W.2d at 826 (finding "[t]he occasional placement of gravel and grading simply ensured that the driveway would be passable and hence, usable" was permissible and did not establish prescriptive rights); *Krogh*, 213 N.W.2d at 506 (finding defendant easement holders "could rightfully remove the [obstructions which deprived them of full use and enjoyment of their easement, without damages to the plaintiff], as long as they did no more than was necessary for that purpose and as long as they could accomplish it without breach of the peace"); *see also* James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements & Licenses in Land* § 8:35 (2014) ("co-holders of a roadway easement have been permitted to alter the landscape in order to improve vehicular passage so long as the rights of the other co-holders are not infringed."). However, a common easement holder generally

> may not park on a right-of-way in such a manner as to obstruct the use by others, or expand the use of a common driveway to include residents of a nearby subdivision, or place wheel blocks on a common right-of-way, or erect a fence across a roadway easement, or construct a ramp in a common driveway. Likewise, one easement holder's installation of speed bumps on a roadway easement may interfere with the right of other easement holders to

use the road. Moreover, . . . one easement holder encroached on the property of the other holder by erecting a retaining wall unrelated to the enjoyment of the easement within the easement area. . . . Nor can a common easement holder in a mutual roadway easement for ingress and egress overburden the easement by use of all-terrain and off-road vehicles.

James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements & Licenses in Land*

§ 8:35 (internal footnotes omitted). As one treatise notes:

Interference with an easement is a form of trespass. Consequently, an easement holder is entitled to equitable relief against a servient owner's unlawful interference with the easement holder's enjoyment of the servitude, particularly when the obstruction is of a permanent character. Courts frequently enjoin the obstruction of an easement and order the removal of encroaching structures at the servient owner's expense. The fact that such removal may be costly is not ordinarily a consideration. . . .

A court of equity, however, may balance the relative hardships of the parties and refuse an injunction when the expense of removing *an innocent encroachment would be disproportionate to the injury suffered by the easement holder*. Likewise, a court may impose equitable restrictions on the easement holder as a condition of granting relief from interference. Moreover, it has been suggested that in an appropriate situation, a court might compel the easement holder to contribute part of the cost of *removing an innocent encroachment*. Further, courts occasionally deny injunctive relief on the ground that monetary damages constitute an adequate remedy for the easement holder.

*Id.* § 8:32 (internal footnotes omitted) (emphasis added).

Here, the district court clearly found Slycord more credible than Martin and Garrett as to the condition of the road. Although Martin asserts he merely made repairs to maintain the road, Slycord testified to the contrary, stating his "repairs" interfered with her use of the road. We rely upon the court's credibility determinations, having witnessed the testimony firsthand, and we further conclude upon our review of the evidence that the driveway is not in the condition Martin and Garrett assert. Because the road was not merely "repaired" and an

innocent encroachment, but rather it was damaged by Martin going out of his way to alter the road to Slycord's detriment, Martin must solely restore it to its former condition. *See id.*; *see also Schwartz v. Grossman*, 173 N.W.2d 57, 60 (Iowa 1969) (upholding a trial court's order directing defendants to restore conditions to the status existing prior to such wrongful conduct because the defendants' acts made the plaintiff's easement useless); *Nixon v. Welch*, 24 N.W.2d 476, 481 (Iowa 1946) (requiring a county to bear the cost of repairing a culvert it destroyed). Additionally, because of Martin's purposeful interference with Slycord's use of the easement, the court did not err in enjoining Martin from further altering the road. *See Schwartz*, 173 N.W.2d at 61 (Iowa 1969) (holding trial court properly enjoined defendants where defendants willfully and substantially violated "plaintiff's right to the free and unobstructed use of the alley in question" and the defendants did "not intend to discontinue their interference with and obstruction of the easement area unless compelled to do so").

Sometime down the road, when repairs to and maintenance of the road is necessary, the property owners who use the road should share those costs. *See Brentwood Subdivision Rd. Ass'n, Inc.*, 461 N.W.2d at 342. Because neither Martin and Slycord own the road but both use the road, both are "entitled to repair the easement so long as [he or she] does not: [f]irst, interfere with the right of [other] thus to do; and, second, render the private way less convenient or useful for the latter's purposes." *Bina v. Bina*, 239 N.W. 68, 71 (Iowa 1931). However, neither, "in improving the common way, must in any way disturb the improvement thereon made or being made by the other." *Id.* An apportionment of costs for the repairs and maintenance is appropriate if the benefit of those

repairs and maintenance is unequal. *See id.* (holding a sixty-forty percentage apportionment of costs appropriate where the road's use by the parties was roughly a sixty-forty split). We find the following language from the Arizona Court of Appeals helpful in fashioning how costs should be apportioned here:

> [E]ach party's contribution should be based on an equitable apportionment determined after consideration of various relevant factors, which may include but are not limited to each party's proportionate use of the easement, including the amount and intensity of actual use, and the benefits derived therefrom; whether each party received proper notice and a reasonable opportunity to participate in the decisions regarding repairs and maintenance; whether the completed work was reasonable and necessary; whether the repairs and maintenance were performed adequately, properly, and at a reasonable price; the value of any other contributions (monetary or in kind) by the parties to repairs and maintenance; and any other factors that may be deemed relevant.

*Freeman v. Sorchych*, 245 P.3d 927, 935-36 (Ariz. Ct. App. 2011). The property owners should work together in maintaining and sharing costs of the repairs. When in doubt, it is always better to take the high road and talk to your neighbor about proposed repairs and each person's contribution to costs.

### *IV. Conclusion.*

For the foregoing reasons, we affirm the district court's declaratory-judgment ruling in all respects. Costs on appeal are assessed to the appellants.

**AFFIRMED.**