# IN THE COURT OF APPEALS OF IOWA

No. 13-1168
Filed June 11, 2014

**LELAND B. ROUDYBUSH,**
      Plaintiff-Appellee,

**vs.**

**VALLI A. LEWIS and TIMOTHY LEWIS,**
      Defendants-Appellants.

_____

      Appeal from the Iowa District Court for Louisa County, Michael J. Schilling,

Judge.


      Valli Lewis and Timothy Lewis appeal from the district court's award of

damages and easement by prescription to Leland Roudybush.  **AFFIRMED.**



      John E. Wunder, Muscatine, for appellants.

      Roger A. Huddle of Weaver & Huddle, Wapello, for appellee.


      Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

Valli Lewis and Timothy Lewis (the Lewises) appeal from the district court's award of damages and an easement by prescription to Leland Roudybush. The Lewises argue Roudybush failed to mitigate his damages, the district court erred in finding Roudybush was entitled to an easement by prescription, and the district court erred in denying their counterclaim for breach of the contract under which Roudybush leased twenty-five acres from the Lewises. We affirm.

## I.   Facts and Proceedings.

The parties are neighbors who have a long and contentious history arising out of the use of a particular abandoned railroad right-of-way. In 1970, Roudybush purchased about thirty acres of land from Valli Lewis and her husband, Russell.[1] The deed also conveyed the "easement right to use any and all interest now owned by Grantors in the strip . . . commencing at the old abandoned . . . Railroad Right-of-way." Both parties must use this easement to access their property. Roudybush owns land on both sides of the right-of-way. For ten years, starting in 1997, Roudybush also rented twenty-five acres of land from the Lewises for farming.

For forty years, Roudybush used an irrigation system to water his property. The system uses a large irrigation rig which spans the right-of-way. Roudybush testified the rig was tall enough that a car could drive underneath it; the Lewises disagree. In 2008, the Lewises contacted an attorney and notified Roudybush "Your easement regarding that right-of-way is for ingress and egress

---

[1] Russell Lewis is now deceased. Timothy Lewis is Russell and Valli's son.

to your fields only, and does not allow or authorize you to run your irrigation system across that property." Several conflicts ensued, and ultimately the Lewises placed a utility pole on the right-of-way with a solar-powered light. This pole prevented Roudybush from using the irrigation rig to water about eighty acres of land. Roudybush filed suit in response.

A bench trial was held on August 1, 2012. Roudybush, the Lewises, and Robert Olson testified at trial. Olson testified for Roudybush regarding the amount of damage resulting from the inability to water the eighty acres of land for about two weeks. The court issued a comprehensive opinion on May 15, 2013. It began with the conclusion that "neither party proved by a preponderance of the <u>credible</u> evidence the ownership of the abandoned right-of-way." It found, among other things, that Roudybush established the right to an easement by prescription over the right-of-way, Roudybush was entitled to $16,514.35 in actual damages resulting from the pole, and the Lewises' counterclaim for breach of contract was without merit. The Lewises filed a motion to amend or enlarge the findings, which was denied. The Lewises appeal.

## II. Analysis.

This case was captioned and tried in equity; our review is de novo. *Rector v. Alcorn*, 241 N.W.2d 196, 199 (Iowa 1976). "We accordingly give weight to, but are not bound by, trial court's findings." *Id.*

### A. Easement by prescription.

"An easement by prescription is akin to adverse possession. Yet, instead of acquiring title to the property, the putative easement-holder acquires the right to legally use the property." *Nichols v. City Of Evansdale*, 687 N.W.2d 562, 568

(Iowa 2004). An easement by prescription requires use of a piece of land under right or color of title openly, notoriously, continuously, and hostilely for ten years or more. *Id.*

Roudybush used the land under the right or color of title granted by the deed executed in 1970. He used his irrigation unit on the right-of-way for more than ten years. He did so openly, notoriously, and hostilely, contrary to the Lewises' demands, whenever he needed to water those crops. The Lewises argue they "acknowledged that Roudybush had an easement to the abandoned railroad right-of-way. So, Roudybush's actual utilization of that easement does not rise to adverse possession." We find this argument to be unpersuasive. Roudybush continually used the easement in a manner contrary to the Lewises' interpretation of the uses the easement permitted. The district court correctly held Roudybush obtained an easement by prescription through his use of the easement for irrigation over more than ten years.

### B. Damages.

The Lewises do not contest the amount of damages assigned by the court, rather they ask us to reverse the district court's decision not to consider their claim that Roudybush failed to mitigate his damages. "The defense of mitigation or avoidable consequences must be both pleaded and proven by the asserting party. If this special defense is not pleaded and proved, defendant is limited to circumstances growing out of plaintiff's testimony." *McHose v. Physician & Clinic Servs., Inc.*, 548 N.W.2d 158, 160 (Iowa Ct. App. 1996) (internal citation omitted). The Lewises did not plead the special defense of failure to mitigate, and were limited at trial (and now, on appeal) to Roudybush's

testimony about his options to mitigate his damages. *See id.*; *see also Nizzi v. Laverty Sprayers, Inc.*, 143 N.W.2d 312, 318 (Iowa 1966). Roudybush testified he theoretically could have operated his rig counter-clockwise and then again clockwise, however, such operation would have been unreasonably difficult.

"Initially, there must be substantial evidence that there was something that the plaintiff could do to mitigate his loss and that requiring the plaintiff to do so was reasonable under the circumstances. Furthermore, it must be shown that the plaintiff acted unreasonably in failing to undertake the mitigating activity." *Greenwood v. Mitchell*, 621 N.W.2d 200, 205 (Iowa 2001) (internal citation omitted). The defendant's burden to prove this fact is the same as the plaintiff's burden to prove the defendant proximately caused the plaintiff's damages. *Id.* at 207. The district court concluded, and we agree, the Lewises did not meet their burden to prove Roudybush reasonably could have mitigated his damages in this case.

### C. Denial of counterclaim.

Finally, the Lewises argue the district court erred in failing to allow their counterclaim for breach of a rental agreement. The Lewises allege Roudybush farmed an extra eight acres of their land during the ten years Roudybush leased the land. The court held the Lewises failed to prove that Roudybush farmed the extra acres, and even if Roudybush did farm those acres, the Lewises must bear the risk of the mistake.

The Lewises presented evidence that the area farmed by Roudybush was actually thirty-three acres, not twenty-five acres. While a written contract existed for the 1997 crop year, any agreement thereafter was not in writing. The record

shows Roudybush paid more than $1250—he paid $1400. This amount is more than he owed if the contract continued at a rate of fifty dollars per acre for twenty-five acres for those subsequent nine years. The record also shows the ownership of any extra acres in the area was unclear. "A breach of a contract is a party's failure, without legal excuse, to perform any promise which forms a whole or a part of the contract." *Magnusson Agency v. Pub. Entity Nat. Co.-Midwest*, 560 N.W.2d 20, 27 (Iowa 1997). Based on the evidence presented, we agree with the district court that the Lewises failed to prove a breach of contract by Roudybush.

We therefore affirm the district court. Costs on appeal are assessed to the Lewises.

**AFFIRMED.**

Bower, J., concurs; Doyle, J., concurs specially.

**DOYLE, J.** (writing separately)

I concur, but write separately to address a not uncommon appendix infirmity. Implicit in our rules of appellate procedure is that the parties include *legible* materials in the appendix. At best, the inclusion of illegible materials in the appendix is of little value to the reader, and at worst, the source of considerable frustration. We have previously stressed the importance of providing legible materials in the appendix. *See Slycord v. Garrett*, No. 13-1192, 2014 WL 1714955, at *3 n.3 (Iowa Ct. App. April 30, 2014). I reiterate what I said in *Slycord*. *See id.* Visualization of the subject matter of a land or property dispute is critical to a full understanding of the dispute. Plat maps, aerial photographs, photographs, and drawings are routinely used as trial exhibits to aid the finder of fact. Color is commonly employed in these exhibits to clearly delineate boundaries and ownership of lands, and witnesses testifying at trial typically refer to "this color parcel" or "that color line." When appearing in an appendix on appeal, all too often these peacock-colored models of clarity have been transformed into illegible black-and-white head-scratchers. Such is the case here. It is frustrating to an appellate judge reading transcript testimony referring to colored exhibits while at the same time looking at black-and-white reproductions in the appendix. To be sure, the original trial exhibits are typically available to this court—but not readily available to those judges who office outside Des Moines. While we are cognizant of the fact that color reproductions in the appendix are more costly than black-and-white copies, it would be helpful to the court if litigants would at least include in the appendix color copies of those exhibits most critical to understanding the dispute.

This court's mandate is to justly decide a high volume of appeals. *See* Iowa Ct. R. 21.11. The appendix is readily available to all. Clarity in the appendix promotes judicial efficiency, thus aiding this court in working toward meeting its mandate. With full implementation of EDMS and electronic appellate filing, the paper appendix will go the way of the dinosaur. But until then, all we suggest is that the parties exercise a little more care in producing their appendices.