B. AGNES WHALEN, Appellee, v. HARRY V. SMITH et al., Appellants.

**ADVERSE POSSESSION:** Hostile Character of Possession—Vacant
1     Lots.     Adverse possession results from the act of one who, in
good faith, and under a deed supposedly carrying title to certain vacant lands, goes upon said land at reasonable intervals, marks its limits with visible monuments, clears it of debris to such limits, and, as occasion may require, asserts his full ownership within said marked limits.

**DEEDS:** Construction—Deed to Lot Impliedly Conveying Vacated
2     Alley.    Owners of lots who consent to the vacation of an appurtenant and separating alley, on the express condition that such vacation will carry to each lot owner title to a proportionate part of said alley, are bound thereby. It follows that a subsequent deed by one of such owners for his particular lot will be construed as carrying title to the grantor's portion of the alley, even though the lot is described by its lot number only.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

MAY 20, 1918.

SUIT in equity to enjoin defendants from interfering with plaintiff's possession of certain real estate. There was a decree for plaintiff, as prayed, and defendants appeal. The material facts are stated in the opinion.—*Affirmed.*

*Tomlinson & Gilmore,* for appellants.

*Nourse & Nourse,* for appellee.

WEAVER, J.—In the year 1893, one Burleigh, being the owner of a tract of land in the city of Des Moines, platted it into two ranges or tiers of lots, separated by an alley 14 feet in width. Among these lots, one described as No. 9, being 50 feet in width, and extending east and west, was bounded on the west end by the alley above mentioned. On

the opposite side of the alley, and bounding thereon, was Lot No. 16, of the same width. The plat was duly executed, acknowledged, and recorded, and given the name "Sherman Place." As thus platted, the entire property was conveyed by Burleigh to a corporation, which, later, conveyed it to Hoyt Sherman. In 1896, Sherman, who still owned most of the lots, including 9 and 16, united with all the other owners of lots in Sherman Place in a petition to the city council "to declare vacated, and all rights of the city of Des Moines annulled in and to, all of said alley lying between Lots 1, 2, 3, 4, 7, 8, and 9 upon the east, and Lots 24, 23, 22, 21, 18, 17, and 16 upon the west, and the title of the same merged into that of said abutting lots." Thereafter, the city council, by ordinance duly enacted, ordered the vacation of the alley as prayed. Hoyt Sherman died in 1904; and, in the course of the settlement of his affairs, the court ordered the executors of his will to sell said lots. On February 16, 1906, the executors, by their agent, one McCutchen, entered into a contract with plaintiff to sell and convey to her Lot No. 9, Sherman Place, and to make conveyance as soon as the deal was approved by the court. This agreement was evidenced by a writing, stating the terms of sale, and including a stipulation that "the purchaser is to be given possession of the full lot." Pursuant to this agreement, the executors, on May 9, 1906, executed and delivered their deed for Lot 9 to the plaintiff, who still holds the title so conveyed. It is the plaintiff's claim that the property so purchased by her, though described in the deed as Lot 9, included, and was intended to include, not only the area of Lot 9, as originally platted, but also one half the width of the vacated alley abutting thereon. In pursuance of such purchase and understanding, and under claim of right so founded, she alleges that, immediately upon acquiring said property, she took actual possession thereof, including the east one half of the vacated alley

abutting on Lot 9, and for more than 10 years maintained such possession openly, exclusively, and adversely to the claims of all other persons. In August, 1916, the defendants, claiming title in themselves, sought to exclude the plaintiff from the east half of said alley, and thereupon she brought.this action, alleging her superior and exclusive title and right thereto, and asking that the defendants be enjoined from disturbing her in her enjoyment of the rights so acquired. The defendants deny the petition, and assert their own exclusive right to the vacated alley to its entire width, and ask that the title be quieted in them against the plaintiff. The trial court, having heard the evidence offered by the respective parties, found for the plaintiff, and the defendants appeal.

The original platting of the property and the subsequent vacation of that part of the alley, at the time and in the manner alleged, are not made a matter of dispute. It is the position of the appellants, however, that the effect of the vacation of the alley was not to vest the title in equal proportions in the owners of the abutting lots, under the provisions of Code Section 919, but to take away the easement in the alley which had been made appurtenant to such lots by the original dedication, and to restore the entire unincumbered title to such alley to Hoyt Sherman, from the trustees of whose estate defendants allege they have acquired title by quitclaim deed. Defendants claim first to have acquired title to Lot 16, with other lots on the west side of the vacated alley, in the summer of 1916. Their deeds to these lots are not shown in the record, but it seems to be assumed in argument that they were from the trustees of the Sherman estate, and we will so consider it. Evidently, this conveyance, like that made the plaintiff, contained no express mention of the alley, but simply described the lots by number. Defendants then sought to procure a deed expressly conveying the alley. One Oleson had acted

as agent for the trustees in selling the lots, and with him appellants say they made a deal by which, for the consideration of one dollar, to be paid to the trustees, who alone could have any shadow of title to the alley (if such title had not already vested in the lot owners), they would quitclaim to the defendant; and at the same time, and as a further consideration to Oleson, who had neither title nor color of title, defendants undertook to convey to him another undescribed lot, on which they placed a value of $150. The quitclaim deed by the trustees was finally consummated in August, 1915; but the evidence on part of plaintiff tends to show that no effort was made by the defendants to exclude plaintiff from the east half of the alley until August, 1916.[1]

The principal questions discussed by counsel in this court are as follows: (1) The legal effect of the vacation of the alley upon the title to the land included therein; and (2) whether the plaintiff's claim of title may properly be upheld, because of adverse possession by her for the period of 10 years.

I. As the last inquiry, if answered in the affirmative, will be decisive of the appeal, we give it first attention. An examination of the testimony, as shown by the record, satisfies us that the decree below may well be sustained on this ground alone. The testimony fairly tends to show that, promptly upon making the purchase, plaintiff went upon the property, including the seven-foot strip constituting one half the vacated alley, cut the weeds and grass, set posts at the corners of the lot as thus enlarged, had it surveyed and staked, and later graded the level of the seven-foot strip down to the level of the lot generally. She did not build upon the property or occupy it as a home until about two years after she obtained the conveyance, but, during the interim, she was apparently caring for it and preparing it for the building improvement which she ulti-

1. ADVERSE POSSESSION: hostile character of possession: vacant lots.

mately made. Appellants argue, and their defense of this branch of the plaintiff's claim is based upon the proposition, that, until the building of the house on Lot 9, at which time it is shown she caused earth to be taken from the alley and hauled or moved upon the lot, plaintiff did no act and exercised no control over the seven-foot strip now claimed by her which "can possibly be construed as taking or holding adverse possession of any portion of the alley." The point thus made is not supported by the record. To constitute adverse possession, or to set in operation the statute of limitations, does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders, to oppose the entry of trespassers or hostile claimants. It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition. It is manifest that the acts of ownership and dominion necessary to indicate adverse possession of a vacant lot need not and cannot be the same as those which a court or jury might think essential with respect to a lot covered with valuable improvements, or upon which there is a place of residence. If one asserting ownership of a vacant lot goes upon it at reasonable intervals, marks its limits or corners with visible monuments, clears it of brush, grass, and weeds to the limits so indicated, and points it out to his neighbors and friends as his property, it constitutes adverse possession, within the meaning of the law; and, when it is continued without interruption for a period of 10 years, his title becomes unassailable. Measured by this rule, there is little room to doubt that plaintiff is entitled to the relief given her by the court below. That plaintiff's claim of right and of title was asserted and relied upon by her in good faith from the outset, is well substantiated. When she purchased

the lot from the agent representing the Sherman estate, he represented that the purchase carried with it, or assured to her, the half of the alley. The preliminary contract to sell provided that the purchaser was to be given possession of the "full lot." This expression does not clearly indicate any reference to the alley, and no explanation of it is offered by the defendant; but, in view of all the circumstances, the plaintiff's interpretation of the phrase "full lot" as being intended to include the added strip from the alley, is not unnatural. That plaintiff, as well as her grantors, understood that the conveyance to her of Lot 9 gave her title to the lot, not only as originally platted, but also as being enlarged to include half of the alley, is quite clear. She and they may have been mistaken as to the strict legal effect of the conveyance; but, if they believed that by this deed plaintiff acquired the title to the vacated strip, and she, in good faith and under such claim, took and maintained possession for the required period, such possession was adverse, and her claim of right was sufficient to bar the assertion of title by the defendant.

II. The conclusion announced in the preceding paragraph renders unnecessary any disposition of the other question presented. It may, nevertheless, be said that, admitting, for the purposes of the argument only, appellant's contention that, generally speaking, the mere vacation of the alley without vacating the abutting plat of lots will not change or affect the size or proportion of such lots, and that, in such case, the vacated alley will remain a distinct and separate tract of land, yet there is no statute or rule or principle of law which prohibits the owners of the abutting lots to which the alley is appurtenant from consenting to its vacation, upon condition that, when so vacated, the title to the land included within the alley shall accrue in equal proportions to the several owners of such

2. DEEDS: construction: deed to lot impliedly conveying vacated alley.

lots. In this case, the petition upon which the vacation was ordered states, in express terms, not only the desire and purpose of the petitioners to have the alley vacated, but also that "the title to same be duly merged into that of said abutting lots." Now, while it may be said that the language here employed was inaptly chosen, and that the title to one tract of land cannot, in a legal sense, be "merged" into the title of another tract, the intent and purpose of the petitioners that, upon the vacation of the alley, the ownership of each lot, as originally platted, should draw to it the ownership of a proportionate part of the land relieved from the public easement, thus, in practical effect, extending each lot to the middle line of the alley, are clearly evident. Whether, as a technical proposition, the description in the deeds of the lots so affected by the numbers given them in the original plat, and nothing more, is or is not sufficient to give it effect as a conveyance of the enlarged lot, it cannot be doubted that it will be held to have such effect if it fairly appear that such was the intent of the parties to the instrument. That such was the intent in this instance is not open to reasonable question. It is true, there is no direct evidence of the understanding or intent of plaintiff's grantors. It is shown, however, that their agent assured the plaintiff that she was, by her purchase of Lot 9, getting the one half of the vacated alley abutting thereon. It appears also that, when the trustees deeded Lot 16, on the opposite side of the alley, to the defendants, they described it by number only. So far as shown, they never, at any time thereafter, claimed to have retained to themselves or to the Sherman estate any part of the intervening space formerly occupied by the alley. Sherman himself was a party to petition for vacation of the alley, and must be held to have consented to the condition on which it was ordered. The quitclaim of the trustees for the nominal consideration of one dollar constituted no claim or assertion of title on their

part, and indicates little more than the easy good nature of the average man, who sees no harm in quitclaiming, without money and without price, to a soliciting speculator in doubtful titles, a tract of land in which he neither claims nor has any property right whatever. It is scarcely credible that the trustees understood or believed that, in selling the lots occupied by plaintiff on one side and defendants on the other, they were retaining to themselves or to the Sherman estate the narrow strip between. Had they not quitclaimed, and, at this late day, had sought to occupy that strip to the exclusion of their grantees of these lots, the court would have no hesitation in holding that such assertion of title was inconsistent with both the expressed and implied conditions upon which the vacation of the alley was sought and obtained, and inconsistent with the practical interpretation which both parties placed upon the contract. The defendants, as grantees in the quitclaim deed, occupy no stronger or better position, and their prayer for affirmative relief was properly denied.

The decree below is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.