**C.H. MOORE TRUST ESTATE by John WARNER IV and Elizabeth H. O'Herin, Trustees, Appellant,**

v.

**The CITY OF STORM LAKE, Iowa, Municipality of the State of Iowa, and the State of Iowa, Appellees.**

No. 86–1463.

Supreme Court of Iowa.

May 11, 1988.

David P. Jennett of McCullough Law Firm, Sac City, and David R. Gault of Bittner & Gault, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Steven G. Norby, Asst. Attys. Gen., for appellee State of Iowa.

Paul D. Havens, Storm Lake, for appellee City of Storm Lake.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

The C.H. Moore Trust Estate (Moore) filed an action in 1984 to quiet title to lakefront property and abandoned railroad right-of-way on the east shore of Storm Lake. The State of Iowa and the City of Storm Lake were named as defendants as well as other parties who were later dismissed. As to one tract of land, which is riparian to the lake, the defendants raised the affirmative defenses of Iowa Code sections 614.1(5) and 614.17 (1983) (statutes of limitations). As to a second tract, a portion of abandoned railroad right-of-way, the State relied on Iowa Code section 327G.77 (1979) which, it claimed, grants ownership to the State of one-half of the right-of-way. The district court entered summary judgment quieting title in the State under its counterclaim against Moore and dismissed the plaintiffs' petition. On Moore's appeal, we affirm.

Moore does not challenge the district court's ruling as to all of the land originally involved, only those tracts referred to by the district court, and the parties, as tracts two and five. Tract two is a narrow strip of land on the east shore of the lake which was created by fill from the State's dredging operation. This tract was conveyed to the City of Storm Lake in 1962 for use as a city park. *See* Iowa Code § 111.32 (1962) (provision for conveyance of land by state to city or county on condition it be used for public park; land to revert to state if it ceases to be so used). Because of the possibility of reversion to the state under Iowa Code section 111.32, the State continues to have an interest in maintaining ownership of tract two which is aligned with that of the city. In respect to tract two, therefore, we will refer to the defendants collectively as the State. Tract five is a strip of abandoned railroad right-of-way near the lakefront.

## I. *The Accretion Land.*

Tract two consists entirely of dredge fill deposited along the east shore by the State's dredging operation which began "in the early 1940s." Moore claims title to tract two on the ground that it was the owner of the riparian land adjoining the dredge fill. *See, e.g., Lakeside Boating & Bathing, Inc. v. State,* 344 N.W.2d 217, 220–22 (Iowa 1984) (*Lakeside,* like the present case, involved ownership of dredge

fill along a portion of the east shore of Storm Lake.).

In *Lakeside* we held that a riparian owner's right to accreted land is the same whether the accretion occurs from natural causes such as the flowage of a river, or from artificial means over which the owner has no control. *Id.* at 220. In the case of artificial depositing of land, the riparian owner will become the owner of the additional land, unless the dredging operation is reasonably necessary for navigational or other paramount state purposes. *Id.* at 221–22.

■ In the present case, there is no dispute that the original riparian land was owned by Moore, and there is no claim by the State that the lake dredging was done for navigational or other paramount state purposes. Under *Lakeside,* it could therefore be persuasively argued that the newly formed land was at least initially owned by Moore. The State concedes this to be true, for summary judgment purposes. It contends, however, that initial ownership is immaterial; since the State had exercised a claim of right to the land for over ten years, any ownership by Moore was lost through adverse possession. *See* Iowa Code § 614.1. That section provides:

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 5. *Written contracts—judgments of courts not of record—recovery of real property.* Those founded on written contracts, or on judgments of any courts except those provided for in the next subsection, and those brought for the recovery of real property, within ten years.

A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years. *Marksbury v. State,* 322 N.W. 2d 281, 287 (Iowa 1982). Proof of these elements must be "clear and positive." *Carpenter v. Ruperto,* 315 N.W.2d 782,

784 (Iowa 1982). Since the law presumes possession is under a regular title, the doctrine of adverse possession is strictly construed. *Id.*

■ A claimant, however, need not establish both color of title and claim of right; either will suffice. *Council Bluffs Sav. Bank v. Simmons,* 243 N.W.2d 634, 636 (Iowa), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 532, 50 L.Ed.2d 613 (1976). Concerning a claim of right, we have noted that

> [i]t is not necessary to establish a claim of right ... by an express declaration ...; it is sufficient if ... [claimant] has acted so as to clearly indicate he did claim title.... [It] need not be based on writing.... The actual occupation, use, and improvement of the premises by the claimant, as if he were in fact the owner thereof without payment of rent or recognition of title in another or disavowal of title in himself, will be sufficient to raise a presumption of his entry and holding as absolute owner and, unless rebutted, will establish the fact of a claim of right.

*Id.* (quoting 3 Am.Jur.2d *Adverse Possession* § 101, at 184–85 (1962)).

Moore argues that the State has not had exclusive or hostile possession of the land, now used as a park, because it has been used by the public at large. However,

> [t]o constitute adverse possession, or to set in operation the statute of limitations, does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders, to oppose the entry of trespassers or hostile claimants. *It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition.*

*Whalen v. Smith,* 183 Iowa 949, 953, 167 N.W. 646, 647 (1918) (emphasis added).

■ Use of the Storm Lake park by the public is consistent with the State's claim of right; under the reasoning of *Whalen,*

the city's allowance of public access is such use as "ordinarily marks the conduct of owners in general, in holding ... property of like nature and condition." *Id. See also Moffitt v. Future Assurance Assocs.*, 258 Iowa 1160, 1171, 140 N.W.2d 108, 114 (1966). The very purpose of owning or maintaining a park is to allow its use by the public.

There was uncontroverted evidence, in the form of affidavits, that the State and the City of Storm Lake have exercised complete dominion over tract two from the time of its creation until the filing of the present action. Moore did not offer any evidence in the form of affidavit or otherwise in resistance to the State's summary judgment motion to challenge the State's claim of continuous possession of the property. Moore may not, of course, rely merely on the allegations of its pleading in response to the State's counterclaim. *See Liska v. First Nat'l Bank in Sioux City*, 310 N.W. 2d 531, 534 (Iowa App.1981); Iowa R.Civ.P. 237(e). It appears that Moore did not even assert a claim to the property until approximately 1981. We conclude there is no dispute in the record as to the facts establishing the State's claim of right.

█ Moore also claims that the ten-year statute of limitations of section 614.1(5) may not be applied, because the beginning date of the State's possession was not established. There appears to be no dispute, however, that the State exercised dominion over the fill land from the beginning of the dredging operation. Thus, the beginning of the ten-year statute of limitations would be placed "in the early 1940s," even under Moore's own allegations. ("The early 1940s" is the time, the parties agree, that the dredging operation began.)

It is not clear when the dredging operation ended, but it is clear that it ended at least by 1962, which was the time the land was deeded to the city. Because this date was well beyond the ten years required by

section 614.1(5), we agree with the district court that there was no genuine issue of fact as to the passage of the requisite ten-year period.

We affirm the district court's quieting of title in tract two in the State (subject to the conditions of its 1962 conveyance to the City of Storm Lake). Disposition on this basis makes it unnecessary for us to address the State's alternative propositions for affirmance as to tract two.

## II. *The Abandoned Railroad Land.*

Tract five consists of the west half of a railroad right-of-way abandoned in 1979. This tract is joined to the west by land owned by the State and on the east by land owned by Moore. The district court quieted title in the State on the basis of Iowa Code section 327G.77 (1979), which provided:

> If a railway, or any part thereof, shall not be used or operated for a period of eight years, ... the right of way, including the roadbed, shall revert to the persons *who, at the time of the reversion, are owners of the tract from which such right of way was taken.*

(Emphasis added.) [1] The district court ruled that, under this section, eight years after the 1979 abandonment, the State would become the owner of tract five because the State was the owner of land which joined it on the west. (At the time of the summary judgment hearing, the eight-year period had not yet passed.)

It is undisputed that C.H. Moore, the plaintiffs' predecessor in interest, owned the entire government lot through which the railroad condemned its right-of-way in 1899. The State argues, however, that the key under section 327G.77 is not who has succeeded to the interests of the original owner of the land on which the railroad was built, but rather who owns the land adjoining the right-of-way at the time of its abandonment.

---

**1.** In 1979, the railway company quitclaimed its interest in the entire right-of-way, including tract five, to Moore. However, Moore does not attempt to claim ownership of tract five on the strength of this deed. *See Chadek v. Alberhasky,*

253 Iowa 32, 37, 111 N.W.2d 297, 300 (1961) (Transfer by railroad after abandonment conveys only the right of possession during the eight-year period preceding reversion.).

In *Brugman v. Bloomer*, 234 Iowa 813, 13 N.W.2d 313 (1944), we construed a predecessor to section 327G.77, which provided that abandoned railroad property "shall revert to the persons who, at the time of reversion are owners of the tract from which right-of-way was taken." In *Brugman*, as in this case, the original owner of the land through which the railroad was built had conveyed land on each side of the railroad to different parties. We held that, on abandonment of the railroad, the owner on each side was entitled to share the reversion of the right-of-way, one-half to each. *Id.* at 816, 13 N.W.2d at 314. We adhere to that ruling here. We affirm the district court in quieting title to tract five in the State of Iowa.

We have considered all the issues asserted by Moore, including those not specifically discussed, and conclude there is no merit to them. Accordingly, we affirm.

AFFIRMED.