# IN THE COURT OF APPEALS OF IOWA

No. 20-0297
Filed July 21, 2021

**POWESHIEK TOWNSHIP, JASPER COUNTY, IOWA,**
Plaintiff-Appellee/Cross-Appellant,

**and**

**JASPER COUNTY, IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBERT F. GANNON SEPARATE PROPERTY TRUST DATED DECEMBER 10, 2015; ROBERT F. GANNON, TRUSTEE OF THE ROBERT F. GANNON SEPARATE PROPERTY TRUST DATED DECEMBER 10. 2015; and ROBERT F. GANNON,**
Defendants-Appellants/Cross-Appellees.
_____

Appeal from the Iowa District Court for Jasper County, Brad McCall, Judge.

The defendants appeal and the plaintiffs cross-appeal from the district court's rulings in this property dispute. **AFFIRMED ON BOTH APPEALS.**

Verle W. Norris of the Law Office of Verle W. Norris, Corydon, for appellants.

Jason C. Palmer and Seth R. Delutri of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Heard by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

On January 16, 2018, the district court entered summary judgment for plaintiffs Poweshiek Township and Jasper County (collectively "the Township") on their claim of adverse possession and quieted title to Sams Cemetery. On January 3, 2019, the district court entered summary judgment for the Township on its claim for an access easement to Sams Cemetery, whether by prescription or necessity. On January 16, 2020, after a trial on remaining issues, the court determined the boundary lines of Sams Cemetery and the width and direction of the access easement. The defendants appeal, asserting genuine issues of material fact precluded the summary judgment rulings. The Township cross-appeals the court's establishing the width of the access easement at sixteen feet rather than twenty feet.

Because the Township acquired title to Sams Cemetery by adverse possession at latest by 1995, the court did not err in granting summary judgment on the Township's quiet title action and its claim for an access easement to the cemetery. We discern no reason to modify the court's ruling as to the boundaries of the cemetery or the width and description of the access easement. Therefore, we affirm on both appeals.

**I. Background Facts and Proceedings.**

Sams Cemetery is approximately two acres in size and situated in Poweshiek Township, Jasper County, Iowa. Sams Cemetery is named after John Sams, who acquired the land where the cemetery is located by land patent dated March 1, 1854. John Sams died in 1891 and was buried in Sams Cemetery. A memorial written sometime after 1902 about John Sams and his wife Susan

Evaline Sams notes, "His funeral was conducted at the home by Chancellor Carpenter, of Drake University, and he was laid to rest in the burial ground he had bequeathed to the township and which bears his name." No deed or conveyance document can be found officially transferring Sams Cemetery to either Poweshiek Township or Jasper County.

In 1893, husband and wife Solomon and R.J. Dickey executed a "Right of Way Deed"—the Dickey Easement—conveying to the Trustees of Poweshiek Township a

> strip of land twenty feet wide commencing at the SE corner of the NW 1/4 of the NW 1/4 Sec. 16 TP 80 Rng. 21 West 5th P.M. Jasper County Iowa run thence North to Section Line, thence East 34 rods. The said strip of land being on the West and North sides of the N.E. 1/4 of the N.W. 1/4 16-80-21[.]

The Dickey Easement expressly conveyed this west-to-east strip of land "for all purposes incident and necessary to travel to and from the cemetery" from the public roadway.

Over the next several decades, approximately 200 burials occurred in Sams Cemetery. The Township sold plots, budgeted and expended monies for maintenance of the access road from the Dickey Easement to the cemetery and the cemetery grounds, put up fence around the cemetery, and repaired monuments.

In 1985, Robert Gannon purchased from the heirs of John Sams an acreage within which lies Sams Cemetery.[1] The Dickey Easement terminates at the southern boundary of Gannon's property. At the eastern end of the Dickey Easement is an access road traveling north on Gannon's land to the cemetery. Although a warranty deed of Gannon's property describes thirty-five and one-half acres, Gannon only pays taxes on thirty-three and one-half acres.



In 1989, Gannon's parents purchased burial plots in Sams Cemetery from the Township for $120. From 1985 to 2016, Gannon did not assert ownership or possession of the cemetery. And from 1985 to 2016, Gannon did not attempt to farm any portion of the eastern edge of the cemetery.

On February 17, 2015, Gannon proposed the Township could save money in maintaining Sams Cemetery by contemporaneously using contractors hired by Gannon to perform services on his "adjoining ground," and he requested "approval" and "permission" from the Township to perform certain tasks related to Sams Cemetery. Gannon later rescinded his offer to help improve Sams Cemetery "due to the issue of personal liability [he] would incur for work on public property."

On March 19, 2015, Gannon advised the Township he had authorized grading work to be performed on the access road to Sams Cemetery and

---

[1] In January 2016, Gannon transferred Gannon's land from his individual name to the Robert F. Gannon Separate Property Trust dated December 10, 2015. We will refer to Robert Gannon, individually and as trustee, and the trust collectively as Gannon.

requested the Township "put gravel on the regraded road."  On April 28, Gannon sent an invoice for reimbursement to the Township for the grading work performed on the access road to Sams Cemetery.  On June 5, Poweshiek Township responded, noting the work performed had not been authorized and the request for reimbursement was not properly submitted but it would be discussed at the next meeting of trustees.

Sometime in April 2016, Gannon removed the fence surrounding Sams Cemetery, plowed over and cultivated the eastern end of the cemetery, and planted row crops "up to the area where graves were occupied."

On July 1, 2016, the Township filed a petition to quiet title of Sams Cemetery in the Township, asked the court to determine the boundaries of Sams Cemetery, and sought an easement for a twenty-foot wide access road extending from the Dickey Easement north to Sams Cemetery.

In January 2018, the court granted the Township summary judgment on its claim of adverse possession.  After recounting the ownership and maintenance history described above, the district court ruled:

> The Iowa Cemetery Act contains a specific statutory prohibition against obtaining title to a cemetery by adverse possession: "A cemetery or a pioneer cemetery is exempt from seizure, appropriation, or acquisition of title under any claim of adverse possession, unless it is shown that all remains in the cemetery or pioneer cemetery have been disinterred and removed to another location."  This provision first became a part of the law relating to cemeteries when it was enacted in 2005 [sic].[2]
> When the foregoing legal principles are applied to the facts in the case at bar, even when the facts are viewed in a light most

---

[2] Iowa Code section 523I.316 (2016), entitled "Protection of cemeteries and burial sites" was effective July 2005.  *See* 2005 Iowa Acts, ch. 128, § 38.  However, the quoted language is subsection 523I.316(7), which was added in 2009.  *See* 2009 Iowa Acts, ch. 179, § 144.

favorable to Gannon, the undisputed facts establish, by clear and positive proof that Poweshiek Township acquired title to Sams Cemetery by adverse possession, on or before the date on which the Iowa Cemetery Act was amended to disallow acquiring title to a cemetery by adverse possession.

For a period of far more than ten years Poweshiek Township has exercised hostile, actual, open, exclusive and continuous possession of the real estate making up Sams Cemetery. While this use and occupancy has not been under any color of title despite the reference in John Sams'[s] memoirs, the use and occupancy has been under claim of right. Poweshiek Township has continuously maintained and improved the property in a manner entirely consistent with ownership of the property.

. . . .

The maintenance and improvement of Sams Cemetery by Poweshiek Township has been actual, open and obvious to all, including Gannon. Jasper County has abdicated its right to collect property taxes related to Sams Cemetery. Poweshiek Township has collected the rents for the real estate, in the form of revenue from the sales of cemetery lots. All of these indices of adverse possession, and ownership, existed for more than ten years prior to the passage of the amendment to the Iowa Cemetery Act prohibiting acquisition of title by adverse possession.

In January 2019, the Township was granted summary judgment on its claim for an access easement to the cemetery: "Precisely the same facts upon which the court concluded the [Township] acquired legal title to the cemetery itself by adverse possession lead to the inescapable conclusion [the Township] acquired a prescriptive access easement connecting the expressly granted Dickey Easement to the cemetery." In the alternative, the court noted "there is clearly an easement by necessity between the Dickey Easement and the cemetery."

On November 11 and 14, 2019, a trial was held to determine the boundaries of the cemetery and the dimensions and location of the access easement. On January 16, 2020, the court issued its findings:

In this case the boundary line for the cemetery was definitely marked by a fence from at least the early 1980s until 2016, when Gannon removed it.

That fence was long recognized and acquiesced in as a boundary between the farmland and the cemetery. As to all of the property within the fence, including the portion at the east end which was not mowed, the evidence establishes [the Township] exercised hostile, actual, open, exclusive and continuous possession. The fence became the true boundary. Gannon had notice of and acquiesced in this fence as a boundary beginning at the time he purchased the property in 1985. As shown by the evidence, it was not until March 2016, when he received the title opinion from attorney Norris, that he believed he was the owner of any portion of the land within the fence.

Unfortunately, before a survey could be done, Gannon removed the fence. Plaintiffs were thus faced with trying to establish where the fence was located before he removed it.

A preponderance of the evidence proves the amended Plat of Survey prepared by [Larry] Hyler . . . establishes the location of the fence before it was removed, to a reasonable degree of surveying certainty.

. . .

In the ruling on [the Township's] motion for summary judgment, filed January 16, 2018, this court concluded "the [Township is] entitled to have title to Sams Cemetery quieted by reason of adverse possession." Title to that portion of land described in [Hyler's amended plat] is hereby quieted in Plaintiffs.

By necessity, an easement by prescription exists over and across Gannon's property, leading from the Dickey Easement north to the southwest corner of the cemetery.

. . . .

Considering both the evidence as to the historic use of the easement, as well as the current necessity for its use as an access from the Dickey Easement to the cemetery, the court finds a preponderance of the evidence establishes the width of the access easement should be limited to [sixteen] feet. Contrary to Gannon's contention, Exhibits C and F do not illustrate the historic width of the access easement; both photos were taken after Gannon removed the fence surrounding the cemetery and started farming closer to the access easement. Gannon's seven foot measurement of the actual width of the easement also occurred following those events.

[Township clerk Debbie] Sage testified she historically mowed on either side of the tire tracks using a [fifty-four inch] mower. This adds a total of nine feet to the seven foot width measured by Gannon, for a total of [sixteen] feet. This conclusion as to width of the access easement is supported by the photos that show the comparative width of both the Dickey Easement and the access easement.

Gannon testified the curve from the Dickey Easement into the south end of the access easement has become more and more rounded and now encroaches more and more on his field located

immediately northwest of the curve. In keeping with the notion that an easement by prescription should be only as wide as is necessary for its purpose, any "curve" necessary to transition from the east-west Dickey Easement onto the north-south access easement should be on the Dickey Easement and should not encroach onto Gannon's property.

The court concluded, "Defendants may use the property covered by the easement for any purpose not inconsistent with the purpose of said easement to provide a means of ingress and egress to Sams Cemetery from the Dickey Easement."

Gannon appeals the grants of summary judgment as well as the court's ruling following the trial. The Township cross-appeals, contending the district court should have granted an easement twenty feet in width.

## II. Summary Judgment.

*A. Scope and standard of review.*

We review a district court ruling on a motion for summary judgment for correction of errors at law. Summary judgment is proper when the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate if the record reveals only a conflict concerning the legal consequences of undisputed facts. We review evidence in the light most favorable to the nonmoving party.

*EMC Ins. Grp., Inc. v. Shepard*, ___ N.W.2d ___, ___, 2021 WL 2384828, at *5 (Iowa 2021) (altered for readability).

*B. Adverse possession results in the Township's title to Sams Cemetery.*

Gannon asserts the court erred in granting summary judgment to the Township on the adverse possession claim. He attacks the ruling on several fronts, contending: (1) the Township's action to quiet title is absolutely barred by Iowa Code section 523I.316(7) because the Township did not file its petition to quiet title before 2016, (2) because the Township's possession began permissively, it could never become

adverse, and (3) genuine issues of material fact concerning requisite elements of an adverse possession remained, precluding summary judgment.

In response, the Township maintains it has adversely possessed the cemetery for more than 100 years, and once the elements of adverse possession are satisfied for a period of ten years the record titleholder is precluded from asserting a claim to recover the property. Because title in fee simple passed by adverse possession long before section 523I.316(7) was enacted, the provision is of no consequence.

"A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Est. v. City of Storm Lake,* 423 N.W.2d 13, 15 (Iowa 1988). "Proof of these elements must be 'clear and positive.'" *Id.* (citation omitted). "[T]he doctrine of adverse possession is strictly construed" because "the law presumes possession is under regular title." *Mitchell v. Daniels*, 509 N.W.2d 497, 499 (Iowa Ct. App. 1993).

> "[T]o constitute adverse possession, *or to set in operation the statute of limitations*, does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders, to oppose the entry of trespassers or hostile claimants. *It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition.*"

*C.H. Moore*, 423 N.W.2d at 15 (first emphasis added) (citation omitted).

We begin with the hostile, actual, open, and exclusive elements, which we will consider together. The summary judgment record establishes the Township—since at least the late 1800s—has taken all actions necessary and attendant to the

ownership, management, and maintenance of a cemetery, including constructing a fence around the cemetery, mowing, clearing brush, repairing monuments, and selling plots.  It also obtained the Dickey Easement to gain access to the driveway to the cemetery in 1893.   Moreover, until 2016, Gannon himself treated the Township as the owner of the cemetery.

In an email dated February 17, 2015, Gannon sought the Township's approval to allow him to "do the improvements to Sams Cemetery that I discussed with you two years ago," including trash removal, disposal of a dying tree, and leveling of "[t]he road leading to the cemetery that crosses my property."  Gannon stated in part:

> What I need from the township committee is the approval to do the work described above that involves the cemetery in particular. I am requesting the payment of $2500 that the township offered to me in the Aug. 7, 2012 e-mail from Ed Parker.  This money will pay for the removal of the dead tree and other trees in the cemetery and their disposal, the removal of the fence, the removal of the debris pile and its disposal and the grading of the road that is on my property.  I am willing to offer personally the earth and the reshaping of the cemetery as well as dressing it up with Spruce trees.
> This is the most economical choice in my mind for the township.  I am only able to offer this up to the time that Huber will be arriving to tear down and burn the small forest that is on my property.  Huber may be in to do this task within the month.  Once Huber removes the small forest on my land I am unable to offer the removal or disposal of the dead trees or debris pile.

In this communication Gannon differentiates the cemetery from his own property.  He seeks permission from the trustees to do work on cemetery grounds.  Why would he ask the Township for payment unless he acknowledges the Township owns the cemetery?

"Hostility of possession does not imply ill will, but only an assertion of ownership by declarations or acts showing a claim of exclusive right to the land."

*Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001). As was the case in *C.H. Moore*, the precise dates are of little moment, because we agree with the district court here "there was no genuine issue of fact as to the passage of the requisite ten-year period." 423 N.W.2d at 16. Even if we assume the Township's possession was not hostile to the titleholder until Gannon purchased his land from Sams's descendants in 1985, the ten-year period ran *at latest* by 1995, and the Township acquired title of the cemetery in fee simple by adverse possession. *See Belding v. Huttenlocher*, 159 N.W. 191, 193 (Iowa 1916) ("It may be conceded, and is conceded, that adverse, actual, visible, notorious, continuous, and hostile possession of real estate for ten years, or more than ten years, under color of title or claim of right, gives fee-simple title to the person so in possession."); *Fagan v. Hook*, 105 N.W. 155, 157 (Iowa 1905) (noting good title "may be acquired by adverse possession," but the contract before the court required more—it was not "enough that the title was in fact good" but whether it "so appeared on the abstract"); *Hohl v. Osborne*, 92 N.W. 697, 698 (Iowa 1902) (holding defendant proved an indefeasible title to land by exclusive occupancy for seventeen years under a claim of right despite record title in another).

Turning to a claim of right, "claim of right" does not require a writing. *Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 636 (Iowa 1976). It requires a person to use land "openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner." *I–80 Assocs., Inc. v. Chi., Rock Island & Pac. R.R. Co.*, 224 N.W.2d 8, 11 (Iowa 1974). In *C.H. Moore*, a party asserted ownership of land formed when the city dredged a lake. 423 N.W.2d at 15. The State argued "initial ownership is immaterial[,] since the State had exercised a

claim of right to the land for over ten years" and maintained the land as a park. *Id.* Our supreme court agreed:

> Use of the Storm Lake park by the public is consistent with the State's claim of right; . . . the city's allowance of public access is such use as "ordinarily marks the conduct of owners in general, in holding . . . property of like nature and condition." The very purpose of owning or maintaining a park is to allow its use by the public.

*Id.* at 15–16 (citations omitted).

Here, the Township has claimed the cemetery of right, selling plots and maintaining the grounds and access to the cemetery. The Township also obtained an easement along neighboring land to the access drive, and Gannon is not taxed on the cemetery acres. *See Louisa Cnty. Conservation Bd. v. Malone*, 778 N.W.2d 204, 208 (Iowa Ct. App. 2009) (finding more than "mere use" of trail established the requisite hostility, noting the board or its predecessors in interest "brought in and spread gravel, cleared brush, mowed, and trimmed trees—in general maintaining the property as a developed nature trail," "placed a sign near where the right-of-way met the road," and paid property taxes on the land).

Gannon's assertion that Iowa Code section 523I.316(7)[3] is an absolute bar is stymied by the same running of the adverse possession clock. This section was not enacted until 2009, long after the Township obtained title by adverse possession.

---

[3] Section 523I.316 generally requires a governmental subdivision to preserve and protect cemeteries. Subsection 7 provides, "A cemetery or a pioneer cemetery is exempt from seizure, appropriation, or acquisition of title under any claim of adverse possession, unless it is shown that all remains in the cemetery or pioneer cemetery have been disinterred and removed to another location." In light of the governmental subdivision's duty to protect a cemetery, the court is not at all convinced this provision applies to a governmental subdivision.

Gannon contends issues of fact remain because the Township's maintenance and repair was not done under a claim of right "but rather a statutory obligation." Gannon asserts the "actions of the Township trustees as they relate to Sams Cemetery and Robert Gannon were wholly consistent with Robert Gannon's ownership and statutory duties." This statement is belied by Gannon's own conduct and communications with the trustees, which acknowledged the Township's ownership of the cemetery from 1985 to 2016.

Moreover, Gannon's appellate counsel argued the duty to maintain cemeteries is enabled by the township trustees' authority to tax property pursuant to Iowa Code section 359.33. Section 359.33 provides: "[Township trustees] may levy a tax not to exceed six and three-fourths cents per thousand dollars of assessed value of taxable property to improve and maintain any cemetery not owned by the township, provided the [cemetery] is devoted to general public use." Here, the trustees did *not* tax Sams Cemetery because they presumed the township owned it.

We find no error in the district court's grant of summary judgment to quiet title of Sams Cemetery to the Township.[4]

*C. Access easement by necessity.* "There are four ways to create an easement: (1) by express grant or reservation, (2) by prescription, (3) by necessity, and (4) by implication." *Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa

---

[4] This conclusion makes it unnecessary to address the Township's alternative claim of ownership by public dedication. *See generally Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 734 (Iowa 2002) (listing elements of dedication).

2004). Here, the district court granted summary judgment on the basis of easement by prescription or necessity.

> An easement by prescription is akin to adverse possession. Yet, instead of acquiring title to the property, the putative easement-holder acquires the right to legally use the property. "Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." . . . .
> An easement by necessity is a form of implied easement, but it "is separate, and we have always recognized it as such." "One significant difference is that an easement by implication requires a showing the parties intended such a right to exist. An easement by necessity involves no such intent." In order to establish an easement by necessity, the putative easement-holder must establish: (1) unity of title to the dominant and servient estates at some point prior to severance, (2) severance of title, and (3) necessity of the easement. The doctrine of easement by necessity is most commonly applied when a landowner parcels out a landlocked portion of his or her land and conveys it to another. Under these circumstances, courts may imply an easement by necessity across the seller's land to provide the purchaser of the landlocked parcel with access to a public road.

*Id.* (internal citations omitted).

The facts establishing the existence of "a prescriptive easement 'must be strictly proved. They cannot be presumed.'" *Brede v. Koop*, 706 N.W.2d 824, 828 (Iowa 2005) (quoting *Simonsen v. Todd*, 154 N.W.2d 730, 736 (Iowa 1967)). Whether the evidence supports the requirements of an easement is determined on a case-by-case basis. *Johnson*, 637 N.W.2d at 179.

We need not address whether the Township established an easement by prescription. Viewing the evidence in the light most favorable to Gannon, no genuine issues of material fact exist with respect to the Township's claim of easement by necessity: (1) legal title to Sams Cemetery and Gannon's surrounding farmland were commonly held by the Sams family and then Robert Gannon, (2) the Township's adverse possession of Sams Cemetery for a period

of ten years severed unity of title, and (3) an easement is necessary for the pubic

to access Sams Cemetery. *See JP Morgan Chase Bank v. Nichols*, No. 12-0301,

2013 WL 85779, at *2–5 (Iowa Ct. App. Jan. 9, 2013) (discussing elements of

easements by necessity).

**III. Legal Description of Cemetery and Easement.**

When the district court granted summary judgment to the Township in its

quiet title action, it stated:

> [W]hile there are no material facts in dispute to overcome the
> conclusion the Plaintiffs are entitled to have title to Sams Cemetery
> quieted by reason of adverse possession, a legal description for
> Sams Cemetery must be ascertained. In the event the parties are
> able to agree as to the legal description, this litigation may end.
> Otherwise, the remaining task at the scheduled trial will be to
> establish the legal description for Sams Cemetery.

And in granting the Township summary judgment on the access easement,

the court noted:

> It is certainly true that Gannon's conduct in removing the fence
> that previously surrounded the cemetery has contributed greatly to
> difficulty in ascertaining the boundaries for the cemetery. On the
> other hand, in ruling on these motions for summary judgment the
> court is required to view the evidence in a light most favorable to
> Gannon. When the evidence is viewed in this light, there are material
> facts in dispute which make the court unable to determine the true
> legal description for both the cemetery and the access easement.
> Thus, while this court has concluded an access easement exists, by
> reason of both prescription and necessity, the court is not able to rule
> as a matter of law the legal descriptions contained in the Plat of
> Survey are the true legal descriptions for the two parcels.

Thus, the matters remaining for trial were the determination of a legal

description for both the cemetery and the access easement. A trial in equity was

held on November 14 and 15, 2019, at which both parties presented evidence.

The court filed its ruling on January 16, 2020. Gannon appeals and the Township cross-appeals.

*A. Scope and standard of review.* Actions to quiet title are tried in equity. *See* Iowa Code § 649.6. Our review is de novo. S*ee* Iowa R. App. P. 6.907. We examine all the facts and the law to decide the issues anew. *See Brede*, 706 N.W.2d at 826. "[W]e are not bound by the trial court's findings of fact, but give them weight in our decision because of the trial court's opportunity to view the evidence and witnesses firsthand." *Kolb v. City of Storm Lake*, 736 N.W.2d 546, 553 (Iowa 2007).

*B. Positions of the parties.* As to the boundaries of the cemetery, the Township relied on a revised plat prepared by Larry Hyler, a certified land surveyor with Bishop Engineering. The plat, also known as the Plat of Survey, is shown below:



CEMETERY DESCRIPTION:
AN IRREGULAR SHAPED PORTION OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 9, TOWNSHIP 80 NORTH, RANGE 21 WEST OF THE 5TH P.M., JASPER COUNTY, IOWA IS DESCRIBED AS FOLLOWS: COMMENCING AT A STONE MONUMENT AT THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9; THENCE S89°40'14"E ASSUMED BEARING FOR THIS DESCRIPTION ALONG THE SOUTH LINE OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9, A DISTANCE OF 537.77 FEET; THENCE N00°00'00"E, A DISTANCE OF 185.61 FEET TO THE POINT OF BEGINNING; THENCE N00°50'12"W, A DISTANCE OF 299.00 FEET; THENCE N88°45'36"E, A DISTANCE OF 305.00 FEET; THENCE S00°23'21"E, A DISTANCE OF 297.00 FEET; THENCE S88°22'33"W, A DISTANCE OF 302.70 FEET TO THE POINT OF BEGINNING.

SAID TRACT OF LAND BEING SUBJECT TO AND TOGETHER WITH ANY AND ALL EASEMENTS OF RECORD.

SAID TRACT OF LAND CONTAINS 2.08 ACRES.

ACCESS EASEMENT DESCRIPTION:
AN IRREGULAR SHAPED PORTION OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 9, TOWNSHIP 80 NORTH, RANGE 21 WEST OF THE 5TH P.M., JASPER COUNTY, IOWA IS DESCRIBED AS FOLLOWS: COMMENCING AT A STONE MONUMENT AT THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9; THENCE S89°40'14"E ASSUMED BEARING FOR THIS DESCRIPTION ALONG THE SOUTH LINE OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9, A DISTANCE OF 517.44 FEET TO THE POINT OF BEGINNING; THENCE N34°36'16"E, A DISTANCE OF 35.79 FEET; THENCE N00°00'00"E, A DISTANCE OF 156.04 FEET; THENCE N88°22'33"E, A DISTANCE OF 20.01 FEET; THENCE S00°00'00"E, A DISTANCE OF 162.84 FEET; THENCE S34°36'16"W, A DISTANCE OF 28.38 FEET TO THE SOUTH LINE OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9; THENCE N89°40'14"W ALONG THE SOUTH LINE OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 9, A DISTANCE OF 24.20 FEET TO THE POINT OF BEGINNING.

Gannon, however, on March 21, 2018, filed a motion for trial regarding true corners and boundaries pursuant to Iowa Code section 650.6, asserting the photo below shows the true borders:



The trial court found there had been a fence surrounding the cemetery since at least the mid-1980s, which was confirmed by Gannon's own testimony that a fence surrounded the cemetery when he purchase the land in 1985. At the east end of the cemetery was an area that was not mowed. Township trustees and the clerk referred to that area as native prairie grass, which was intentionally not mowed but sprouting trees were removed. Gannon testified he considered the mowed area, not the fence, the boundary for the cemetery. The photo submitted by Gannon above was taken after he removed the fence, removed the grasses on the east end, and planted up to the occupied graves in 2016. The court impliedly rejected Gannon's testimony, finding the "fence was long recognized and acquiesced in as a boundary between the farmland and the cemetery." *See* Iowa Code § 650.14 ("If it is found that the boundaries and corners alleged to have been

recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established."). We agree with the trial court, "The fence became the true boundary."

The trial court found:

> Because the fence had been removed before Bishop Engineering personnel could visit the site, it was not possible to simply use the fence to plot the legal description. Instead, Hyler utilized a March 2016 Google Earth photograph and overlaid it onto field measurements taken at the site. Hyler testified that although this is not a commonly-used method of determining the location of a fence that has been removed, it was his opinion that the position of the fence using this method was accurate to a reasonable degree of surveying certainty. The initial Plat of Survey he prepared using this method appears as Plaintiffs' Exh[ibit] 18 [which is depicted above].
> Hyler subsequently modified his original Plat of Survey by moving the north boundary to the south, based upon photographic evidence showing a tree located to the north of the cemetery was outside of the original fence. His modified Plat of Survey appears as Plaintiffs' Exh[ibit] 38. The area enclosed by the boundaries on Plaintiffs' Exh[ibit] 38 is 2.06 acres. The boundaries determined using this method also correlated fairly closely to stakes that were placed at the site by [clerk Debbie] Sage, [trustee] Frank Holdemeyer, and [trustee] Eric Sage.
> . . . .
> A preponderance of the evidence proves the amended Plat of Survey prepared by Hyler, Plaintiffs' Exh[ibit] 38, establishes the location of the fence before it was removed, to a reasonable degree of surveying certainty. While the particular method used by Hyler is not an often-used method for determining the location of fences that have been removed, his rationale and method was supported by sound, scientific reasoning and is the best evidence as to the location. Furthermore, the conclusions he reached in preparing the Plat of Survey are supported and corroborated by other evidence in the record. It is more than just coincidence that the size of the plot of land contained within the fence is 2.06 acres, nearly identical to the amount of land for which Gannon and his predecessor of title have not been taxed.

(Footnotes omitted.)

With respect to the driveway, the Township asserts the driveway should be the same width as the Dickey Easement, twenty feet. It argues, "This width is critical to ensure sufficient space to perform maintenance at the cemetery and allow access for emergency vehicles." But the Township cites to this testimony by trustee Ed Palmer:

> Q. Do you believe the access easement that's shown on Exhibit 13 should be [twenty] feet wide? A. Yes.
> Q. Why? A. Well, if you look at Bishop Engineering's initial plat, it put a strip in there of approximately [twenty] feet wide, designated it as such. Proportionally, that looks correct in terms of how wide the easement needs to be, both in terms of access to the cemetery and in comparison to the Dickey easement. If you make it any less than that, you run the risk of running into problems in the future violating that area.
> Q. What type of problems would you anticipate as a trustee in terms of violating the easement if it only is seven or eight feet? A. Well, clearly, if you only have seven or eight feet—if you look at the Dickey easement, the Dickey easement is basically one car length. It's [twenty] feet. But there aren't two cars that go back and forth there. So it takes, basically, [twenty] feet to make sure everyone feels comfortable being able to navigate the easement and stay on path.
> Clearly, Mr. Gannon and the trustees do not have a good relationship. We'd just as soon not have to repeat circumstances as we have currently.

Nothing in the testimony establishes a twenty-foot wide easement is "critical." Rather, Parker's testimony noted below assesses that width as "within reason":

> Q. I'm assuming as a Poweshiek trustee that you want the public to be able to access the cemetery by vehicle? A. Yes.
> Q. I'm assuming you want the public to access it safely? A. Yes.
> Q. Do you want the trustees or the county to be able to move snow, if necessary, on that easement? A. Yes.
> Q. Do you want them to be able to move snow safely? A. Yes.
> Q. If needed, do you want emergency response vehicles to be able to access Sams Cemetery? A. Yes.
> Q. Do you want those emergency response vehicles able to access it safely and as quickly as possible? A. Yes.

Q. Do you think that it is within reason to have the width of that access easement comport with the [twenty]-feet width of the Dickey easement? A. Yes.

On the other hand, Gannon argues the driveway to the cemetery has historically been one car-width, seven feet.

The court disagreed with both parties, noting:

Hyler determined the legal description for the access easement by taking site measurements of the center line of the path leading from the Dickey Easement to the cemetery. In his Plat of Survey Hyler drew the access easement [twenty] feet wide. He testified he made the decision to draw the easement [twenty] feet wide simply to make it consistent with the width of the Dickey Easement.

The court, considering "both the evidence as to the historic use of the easement, as well as the current necessity for its use as an access to the Dickey Easement to the cemetery," found the width of the access easement should be sixteen feet. The court noted Gannon's seven-foot measurement of the width of driveway occurred after he removed the fence and started farming closer to the driveway. The court then considered Debbie Sage's testimony that when she did the mowing, she "historically mowed on either side of the tire tracks using a [fifty-four inch] mower." The court added the additional nine feet to Gannon's seven foot measurement and ordered a new description prepared that "describes the [sixteen-foot] access easement in a manner that goes straight south into the Dickey Easement and a new Plat of Survey filed."

On our de novo review of the district court's ruling, we discern no reason to disturb the court's findings and conclusions.

**AFFIRMED ON BOTH APPEALS.**